# Doe, ex dem. SALTONSTALL and WIFE, vs. RILEY and DAWSON.

[EJECTMENT BY HEIR-AT-LAW AGAINST CLAIMANT UNDER PURCHASER AT SALE MADE BY ORDER OF ORPHANS' COURT.]

1. *Jurisdiction of orphans' court to order sale of land for payment of debts.*—The jurisdiction of the orphans' court to order a sale of an intestate's real estate for the payment of debts, under the act of 1822 (Aikin's Digest, 180, § 16), affirmatively appears, in a collateral proceeding, when the record shows a petition by the administrator, alleging a deficiency of personal assets for the payment of debts, and asking an order to sell the real estate, and that the court acted on the petition and granted the order of sale.

2. *Conclusiveness of proceedings had under such order of sale.*—Where the record affirmatively shows that the court had jurisdiction to order the sale, that the land was sold by commissioners under its order, that the sale was approved by the court, and that a deed was executed to the purchaser under its mandate, the action of the court, being in the nature of a proceeding *in rem*, is conclusive until vacated, and cannot, though abounding with errors and irregularities, be collaterally impeached.

3. *When recitals in decree of orphans' court may be looked to.*—Although recitals in the decrees of courts of limited jurisdiction cannot give jurisdiction; yet, where the jurisdiction otherwise appears, the decree may be looked to for the purpose of ascertaining whether the action of the court, in ordering a sale of lands, was predicated upon the two petitions separately shown in the record, or whether, as might have been done, one was regarded as amendatory of the other, and the two considered as but one application.

4. *Death of sheriff, and ex officio administrator, how proved.*—Where the validity of a sale of land, made under an order of the orphan's court on the application of an administrator *de bonis non*, is collaterally impeached, parol evidence is admissible to prove the death of the sheriff who, *ex officio*, was the previous administrator, as a jurisdictional fact upon which the court acted in appointing the succeeding administrator. But the sheriff being the executive officer of the orphans' court, that court must be presumed to have known when his term of office expired, whether by limitation or death, and to have acted on its judicial knowledge. The admission of parol evidence, therefore, even if erroneous, could have worked no injury.

5. *Irregularities insufficient to invalidate sale.*—The failure to give the statutory notice by citation to the heirs, and the absence of proof by the record that the guardian *ad litem* of the minor heirs accepted the appointment, or that he filed an answer denying the allegations of the petition, or that the commissioners gave proper notice of the time and place of sale,—are mere irregularities, which might furnish good grounds of reversal on error, but which cannot invalidate the sale, when collaterally attacked, if the record affirmatively shows that the court had jurisdiction.

6. *Deed, when admissible evidence—General objection to evidence.*—A deed of conveyance, executed by the commissioners, under an order of the orphans' court, to the purchaser at their sale, is admissible evidence for a remote purchaser from him, when sued by the intestate's heir-at-law; and though the description contained in it does not correspond with the description of the land sued for, yet, if it embraces any portion of the land sold, a general objection to it may be overruled.

7. *Indefiniteness of description of land—Admissibility of parol evidence to identify it.*— Indefiniteness and discrepancies in the description of the land, in the petition, order of sale, report of sale and commissioners' deed, will not invalidate the sale, when enough appears to show that the land sold and conveyed by the commissioners was comprehended in the description contained in the petition and order of sale; and when this is the case, parol evidence is admissible to fix the boundaries of the portion sold, according to the data furnished by the deed, so as to identify the land therein described.

8. *Boundaries of land how determined.*—Streets which are well defined and designated by some natural or artificial monument, must govern course and distance in fixing the boundaries of lands; but streets which, in the infancy of a city or town, are only undefined portions of land dedicated to public use, themselves requiring to be located, would furnish very uncertain guides in arriving at the boundaries of other lands.

9. *Error without injury.*—When all the evidence is set out in the bill of exceptions, and shows that the plaintiff was not entitled to recover, the appellate court will not reverse in his favor on account of erroneous charges or refusals to charge.

APPEAL from the Circuit Court of Mobile.
Tried before the Hon. C. W. RAPIER.

EJECTMENT by Seneca Saltonstall and Louisa, his wife, against James Riley and Wm. A. Dawson, for the recovery of certain lots in the city of Mobile, which are described in the declaration as, " All the south-east section of square No. 27, as marked on the plot of survey, beginning at the north-west intersection of Franklin and Dauphin streets, thence running along the north side of said Dauphin street 220 feet to the north-east intersection of Dauphin and Hamilton streets, and extending back northwardly 160 feet, and bounded on the east by Franklin street, on the south by Dauphin street, on the west by Hamilton street, and on the north by lands now or lately of Joshua Kennedy." The situation of the land is more particularly shown in the annexed diagram:

The defendants entered into the usual consent rule, and pleaded not guilty; Riley admitting himself to be in possession of "that portion of the premises sued for lying on the north-east corner of Dauphin and Hamilton streets, having a front on north side of Dauphin street of —— feet, and running back 160 feet, and bounded on the east by the lot in the possession of said Wm. A. Dawson; and Dawson admitting his possession of "that portion of the premises sued for lying at the north-west corner of Franklin and Dauphin streets, having a front of 116 feet on the north side of Dauphin street, and running back 160 feet."

The bill of exceptions, sealed on the trial, is as follows:

"The plaintiffs claimed title to the lands sued for as heirs-at-law of Alvan Robeshaw, deceased. It was admitted by the defendants that Mrs. Saltonstall, one of the lessors of the plaintiff, is the only heir-at-law of her father, said Alvan Robeshaw, deceased, and of her brother, who died a minor and childless; that said Alvan Robeshaw died in 1819 or 1820, and was at the time of his death in the seizin and possession of the lands now sued for; that his said son (and only other child) died a few years afterwards, without children; that said Louisa did not attain her majority until July, 1834; and that said Seneca Saltonstall is now, and was at the time the suit was brought, her lawful husband. It was admitted by both parties that the land sued for is in the city of Mobile, and is bounded on the east by Franklin street, on the south by Dauphin street, and on the west by Hamilton street, and that it consisted of six lots; that Claiborne street is now, and was in 1824, the street next east of Franklin street, that there were six lots of land intervening between Claiborne and Franklin streets, and that Claiborne was the most eastern street, and nearest the heart of the city; that the annual rent of the lots sued for, for six years last past, was $75 each; and that the value of the improvements claimed by the defendants was $12,000.

"The defendants claimed title to the premises under a sale made by the county or orphans' court of Mobile in 1824; and, to sustain their title, produced a certified transcript of the entire record of the proceedings in said court in relation to the administration of said Alvan Robeshaw's estate";

which transcript is made a part of the bill of exceptions, and shows the following facts :

The first entry, dated February 3, 1820, is the grant of letters of administration to Mrs. Catherine Robeshaw, and the appointment of three appraisers. On the 9th March, 1820, as the next entry shows, the sureties on the official bond of the administratrix were changed. On the 5th June, 1820, an order of sale of the personal estate was granted to the administratrix, "she producing an inventory and appraisement before the day of sale"; and an inventory and appraisement, together with an account of sales, next appear in the record. On the fourth Monday in February, 1822, Mrs. Robeshaw filed her resignation as administratrix; and letters of administration were thereupon granted to Daniel Duval, then sheriff of Mobile county. In July, 1824, letters of administration were granted to Robert Carr Lane, and the court accepted his bond on the same day.

Two petitions next appear in the record, each signed by the administrator, and one marked, "Filed July 21, 1824"; alleging that the personal estate of said Robeshaw is insufficient to pay his debts, and therefore praying an order to sell certain lots, which are thus described : in one, " three lots of ground, lying on Dauphin street, and bounded south by Dauphin street, *east by Franklin street*, north by the lands of John Moore and Samuel Farnsworth, and west by those of Robert Carr Lane and Hamilton street"; and in the other, " three lots of ground, lying in the city of Mobile, bounded by Dauphin street on the south, *on the east by Claiborne street*, north by the lands of John Moore and Thomas Richardson, jr., and west by the lands of Robert Carr Lane; also, all the right, title, interest and claim which said *Abram* Robeshaw had in or to three other lots adjoining the above on the west, and claimed by Robert Carr Lane." Each of these petitions states there are two minor heirs, whose names and ages are given, that Catherine Robeshaw has been appointed their guardian, and that they all reside in Mobile county.

The next entry, dated July, 1824, is an order that citation issue to the heirs of said Robeshaw, to appear on the third Saturday in August next thereafter, and answer the petition of said administrator for the sale of real estate; and that

Lewis Judson be appointed guardian *ad litem* of the minor heirs. On the 18th September, 1824, citations were ordered to issue to said Judson, and to the minor heirs themselves, to appear on the third Saturday in October next and answer. the administrator's petition for the sale of the real estate; and these citations were issued on 22d September, and executed on the 15th October, the day appointed for the hearing of the petition. On the 24th August, 1824, letters of guardianship over the persons and property of the two minor heirs were granted to Mrs. Catherine Robeshaw. On the hearing of the administrator's petition, on the third Saturday in October, 1824, "satisfactory evidence being adduced to show that the prayer of the petition ought to be granted," the court granted an order of sale "of the following described property, as set forth and specified in said petition— to-wit, three lots of ground, lying in the city of Mobile, and bounded south by Dauphin street, *east by Claiborne street*, north by the lands of John Moore and Samuel (Farnsworth), and west by three lots possessed by Robert Carr Lane; also, the three lots adjoining the above on the west, and bounded south by Dauphin street, west by Hamilton street, and north by the lands of George Getz and said Farnsworth; each lot being 55 feet front, and running back 110 feet." The order appointed Joseph Krebs and Diego McVoy as commissioners to make the sale, directed them to give thirty days notice of the sale in some newspaper published in Mobile, and to make report of their proceedings to the court on the third Saturday of December then next.

The commissioners reported on the 21st December, 1824, that they had sold the lands, "on the premises," on the 19th November, after having given thirty days notice of the time and place of sale by advertisement in the "Mobile Commercial Register", and that James P. Bates became the purchaser "of the three lots bounded south by Dauphin street, west by Hamilton street, north by the lands of George Getz and Samuel Farnsworth, and east by other three lots of said *Abram* Robeshaw; and also of the other three lots adjoining the above on the east, and bounded south by Dauphin street, *east by Claiborne street*, west by the aforementioned three lots, and north by the lands of said Farnsworth and Moore."

12

170         ALABAMA.

Doe, ex dem. Saltonstall and wife, v. Riley and Dawson.

This report, as the minute entry shows, "was approved and ordered to be recorded, which is accordingly done; and it appearing to the satisfaction of the court that the terms of sale have been complied with by said James P. Bates, it is ordered, adjudged, and decreed by the court, that said commissioners convey to said Bates all the right, title and interest which was in said Robeshaw, in and to the above-described premises."

The defendants then offered in evidence the deed made by said commissioners, under the order of the court, to said Bates, in which the land is described as "all that tract of land (or three lots) situate in the city of Mobile, and bounded as follows: west by Hamilton street, south by Dauphin street, east by three other lots belonging to the estate of said A. Robeshaw, deceased, and north by the lands of George Getz and Samuel Farnsworth, containing 110 feet front on Dauphin street, and running back 165 feet; also, another tract of land (or three lots), adjoining the above last-mentioned lots on the east, containing 110 feet front on Dauphin street, and running back 165 feet, and bounded west by the three lots above described, south by Dauphin street, east by Franklin street, and north by the lands of John Moore and Samuel Farnsworth." The plaintiffs objected to the introdution of this deed as evidence, "because it was a deed of different property than that described in the order of sale, in the report of the commissioners to the court, and in the confirmation of the sale by the court." The court overruled the objection, and the plaintiffs excepted.

"The defendants also offered to prove by Joseph Krebs, one of the said commissioners, that the sale of the lots made by them under the order of the court, was made upon the lots sued for in this action, as the premises intended to be sold. To this evidence, so far as it was intended to vary the effect of the said proceedings and sale as contained in the transcript, and to identify the lots sued for as the lots to which the purchaser at said sale thereby acquired title, the plaintiffs objected, on the ground that it was parol evidence, and therefore inadmissible; but the court overruled the objection, and the plaintiffs thereupon excepted."

"The defendants also offered to prove by a witness that

Daniel Duval, former sheriff of Mobile county, whose name is mentioned in said transcript, died in May, 1824. The plaintiffs objected to the admission of this parol testimony, and insisted that his death, or the vacancy of the office of administrator of said Robeshaw's estate by any other means, should appear by the record of said orphans' court, or the loss of the record be shown; but the court overruled the objection, and plaintiffs thereupon excepted."

"The plaintiffs admitted that the defendants had possession, and that they held a regular chain of title from the purchaser at said sale. There was testimony, also, tending to show that the land sued for was contained in the boundaries described in one of the petitions, in the order of sale, and in the report of the commissioners. The plaintiffs then read to the jury, without objection by the defendants, the notice of said sale given by said commissioners, published in the ' Commercial Register,' a newspaper published in the city of Mobile." This notice, which is made a part of the bill of exceptions, was first published on the 19th October, 1824, and described the land as follows : Three lots of ground, lying in the city of Mobile, bounded south by Dauphin street, east by Claiborne street, north by the lands of John Moore; also, all the right, title and interest of A. *Robertson*, deceased, to three other lots, adjoining the above, and bounded west by Hamilton street, south by Dauphin street, north by the lands of George Getz, and east by the aforementioned three lots, each containing 55 feet front, and running back 110 feet." In the second publication of the notice, which was on the 26th October, the name was corrected.

"This was all the evidence in the cause; and upon this evidence the court charged the jury, among other things, as follows :

"1. That the proceedings of the orphans' court were irregular, and some of them erroneous, so as to authorize a reversal in an appellate court; still these irregularities were not such as to render the proceedings void, and, consequently, not such as to avail the plaintiffs in this suit.

"2. That, so far as this case was concerned, all that was necessary to be seen was that the record showed that the orphans' court had jurisdiction of the cause, had taken juris-

diction and directed a sale, and had affirmed the action of the commissioners; and that if these things appeared by the transcript of the record in evidence, and the land claimed by the defendants was within the boundaries of the land described in the order of sale and the report of the commissioners, and was a portion thereof, and had been conveyed by the commissioners with the approval of the court, then the title of the heirs had been divested, and they must find for the defendants.

" 3. That the orphans' court had jurisdiction to make the order of sale, and its decree therein was valid, and could not be impeached in this action.

" 4. That if they believed that the property sued for was described in either of the petitions, and that it was the premises which were actually sold and described in the commissioners' deed to Bates, they must find for the defendants.

" 5. That they might look to said deed, and to the testimony of Krebs, to determine what land was purchased by Bates.

" The plaintiffs excepted to each one of these charges as erroneous, and to the 4th, also, because it referred the construction of the record to the jury; and they then asked the court to give the following charges:

" 1. That if the jury believe from the record evidence that Duval, as sheriff of Mobile county, had been appointed by an order of the orphans' court administrator on the estate of said Alvan Robeshaw, deceased, then, unless it appears from the record of the proceedings of said court that said Duval resigned said administration, or that his term of office had expired, or that he had died or had been removed, before the appointment of said Lane as administrator, the appointment of the latter was unauthorized, and all the proceedings of said court in reference to the sale of the real estate of said Robeshaw were void, and the sale did not divest the title out of the heirs of said Robeshaw.

" 2. It having been admitted by the defendants that Louisa Saltonstall is the daughter and sole heir-at-law of said Alvan Robeshaw, and that she was a minor under the age of twenty-one years at the time of the filing of said Lane's petitions, and at the time of the sale, then, unless it is shown by the

record that citation was issued to her at least forty days before the time fixed for hearing said petition, the action of the court upon said petition was unauthorized and void, and passed no title to the purchaser.

3. "If the jury believe from the evidence that, after the filing of the petition by the administrator, the court appointed Judson guardian *ad litem* of the minor heirs of said Robeshaw, and directed citation to issue to him; yet the court was not authorized to proceed to order the sale, unless it has been shown that said Judson accepted the guardianship, or acted as such guardian.

"4. It was the duty of the guardian to have denied the allegations of the petition; and if the court acted in the premises, and ordered the land to be sold, without such denial being made, then the sale was void, and passed no title as against the heirs of said Robeshaw.

5. "The county court had no power to make the order of sale, without proof taken by deposition showing the necessity of the sale; and unless it has been shown that proof was taken by deposition, the order of sale and the sale were void, and no title passed to the purchaser as against the heirs of said Robeshaw.

" 6. Unless it has been shown in evidence that, before the sale of the land, forty days notice of the time and place of sale was given, by putting up advertisements at three or more public places in the county, and by publishing notice of the sale in some public newspaper in the State, for three successive weeks before the day of sale, then said sale was void as against the heirs of said Robeshaw and those claiming under them.

" 7. Unless the land was so particularly described in the petition on which the court acted that it could be located and identified without oral proof, the court had no jurisdiction, and the sale did not divest the title out of the heirs of said Robeshaw.

" 8. That the commissioners appointed by the court had no authority to sell any other land than that described in the decree of the court ordering the sale; and unless it appears by the decree of the court that the lands sued for in this action are the lands described in said decree, then the title of Robe-

shaw's heirs to the land sued for was not divested by the sale, and the plaintiffs must recover.

"9. It having been admitted by the parties that Claiborne street is east of Franklin street, and that Hamilton street is west of Franklin, and that there were six lots intervening between Claiborne and Franklin streets, and six lots between Franklin and Hamilton streets, and that Robeshaw's lots were bounded on the east by Franklin street,—then, if it appear that, by the decree of said court, a sale was ordered of lots described as being bounded east by Claiborne street, that sale did not divest the title out of the heirs of Robeshaw to the land sued for in this action, and plaintiffs must recover.

"10. No title could pass by the sale without a confirmation of the sale by the court, and the confirmation must be based upon the report of the commissioners; and unless that report, as contained in the said transcript, shows that the property here sued for was the property described in the report, the plaintiffs must recover.

"11. If the court acted upon the petition of the administrator contained in the record, and endorsed 'Filed July 21, 1824,' and that petition called for the sale of only three lots on the corner of Dauphin and Franklin streets, then the court had no power to order the sale of any other lots, nor had the commissioners the right to sell the three other lots on the west of those described in the petition, and to these three no title passed by the sale, and the plaintiffs are entitled to recover them.

"12. If the petition upon which the court acted described the lots as cornering on Claiborne and Dauphin streets, then that must be the starting-point for ascertaining the lots which the commissioners were authorized to sell; and if they sold the three lots cornering on Franklin and Dauphin streets, the sale of the latter was void, and passed no title to the purchaser.

"13. If the jury believe the evidence, they must find in favor of the plaintiffs, for the three lots on Dauphin street immediately west of Franklin, and on the corner of Dauphin and Franklin."

The court refused each one of these charges, except the 8th, "which was given with the qualifications contained in

its previous charges; and to each refusal, as well as to the qualification given, the plaintiffs excepted."

The errors now assigned embrace the rulings of the court on the evidence, the charges given, and the refusals to give the charges asked.

P. WALKER and A. R. MANNING, for appellants:

As preliminary to an examination of the points presented by the record, we lay down the following general propositions: 1.—That the orphans' court is a creature of the statute; that its duties are defined, and its powers declared, by the law of its creation. 2.—That the power given to that court to order a sale of real estate belonging to an intestate, is in the nature of a special power, and, like all special powers, must be strictly pursued; and that this must be shown by the record.—1 Sm. & Mar. Ch. 561; 6 Wheat. 119; 2 Peters, 492; 10 *ib.* 161; 4 Wend. 436; 7 Mass. 488; 3 Barb. 341; 1 How. (Miss.) 558; 14 Ala. 347. 3.—That the record must affirmatively show that every thing necessary to give the court jurisdiction was performed, or the sale will be void.—6 Ala. 112; 6 Port. 244; 6 Sm. & Mar. 259; 7 *ib.* 449. 4.— That no recitals in the record can give the court jurisdiction. 15 Wend. 449; 7 Cowen, 89; 7 Sm. & Mar. 449. 5.—That jurisdiction cannot be presumed.—3 Barb. 341; 12 Ohio, 253; 1 Blackf. 182. 6.—That when claim of title is founded on an administrator's deed, it must be shown not only that a license to sell was given, but that all the requisitions of the statute were complied with.—4 Geo. Rep. 148. 7.—That the statutory requirements, when to be performed before the sale, must be complied with.—6 Port. 245; 16 Ala. 233; 7 *ib.* 268–73. 8.—That the want of jurisdiction may always be set up against a judgment.—2 Comstock, 459; 15 Johns. 141; 19 *ib.* 33; 2 McLean, 479; 1 Dev. Law R. 259; 11 How. 437; 9 Cowen, 229; 11 Wend. 652.

1. Duval, as sheriff, was appointed administrator; and the record does not show that he ever resigned, or died, or that his letters were revoked before Lane was appointed. It will be intended that the transcript is complete and embraces all the entries, orders, &c.—9 Ala. 794. The appointment of Lane, under the circumstances, was a nullity.—1 Cushm.

(Miss.) 550; 1 How. (Miss.) 440. The renunciation of an executor must be shown by the record, and not by acts *in pais.* 5 English, 169; 1 How. (Miss.) 440.

2. The record does not show that the guardian *ad litem* was actually appointed, or that he accepted the trust, or that he answered for the infant heirs; and the petition shows that Catherine Robeshaw was their real guardian.—6 Ala. 607; 16 *ib.* 693; 2 Comstock, 459; 1 Hill's (N. Y.) R. 130; 3 Barb. 341.

3. The court was not authorized to divide the guardianship of the minors, and to commit their property to one and their persons to another. The appointment of Judson was therefore erroneous.—1 Green's (N. J.) R. 80.

4. The statute (Clay's Digest, 224, § 17) required at least forty days notice to the minors, while only twenty-seven days elapsed from the issue of citation until the hearing. The citation was served on them on the same day the decree was rendered, and on their guardian *ad litem* the day previous. Short notice is no notice at all.—6 Port. 245; 11 Ala. 120; 3 Barb. 341; 7 *ib.* 39–45; 1 How. (Miss.) 444. Since a minor cannot assent to a waiver of notice, no decree can be rendered without the statutory notice.—4 Ala. 248; 7 Sm. & Mar. 459; 1 *ib.* 351; 8 Blackf. 542; 12 Missouri, 63; 7 Barb. 45. Even if this be a judgment *in rem,* it is essential that constructive notice, at least, should appear to have been given; as actual notice must be in a proceeding *in personam.*—20 Vermont, 65; 1 How. (Miss.) 440. The court must have jurisdiction of the persons of the minors, or the sale will be void.—2 Comstock, 459; 12 Ohio, 268–74; 1 Hill's (N. Y.) R. 139.

5. There was no proof by deposition; and the recital in the record, " satisfactory evidence being adduced," &c., is not sufficient.—9 Ala. 793; 16 *ib.* 238; 12 *ib.* 268–73; 4 *ib.* 248; 2 *ib.* 662; 11 Humph. 488; 7 Sm. & Mar. 449.

6. Had the court power to decree a sale to pay debts, without other evidence than the oath of the administrator or creditor that there were debts?—10 Paige, 366; 1 Munf. 489. The legal necessity for the sale must appear in the order of the court directing it.—9 Ala. 290; 12 *ib.* 268; 2 *ib.* 662; 15 *ib.* 768.

Doe, ex dem. Saltonstall and wife, v. Riley and Dawson.

7. There was not sufficient notice of the sale.—6 Port. 245; 7. Ala. 864; 16 *ib.* 233. The record must show that legal notice was given.—1 Sm. & Mar. 351; 7 *ib.* 449; 7 Barb. 45; 3 Denio, 249; 20 Wend. 249; 4 Geo. R. 148; 6 Port. 245; 11 Ala. 118–20.

8. The land sued for is not the land described in the petition, in the order of sale, or in the report of the sale. Parol evidence is not admissible to change the description contained in them.—70 En. Com. Law R. 260; 6 N. H. 205; 5 Hill, 272; 5 Ired. Eq. 373; 3 Ala. 623; 14 *ib.* 347; 13 *ib.* 38; 15 *ib.* 768; Phil. Ev. (C. & H. Notes), 571. Streets, being the most durable monuments, must govern description.—9 Iredell, 58.

9. As to the charges given and refused by the court:

The first charge given is erroneous, because, 1st, the record shows that an administrator had been appointed previous to the appointment of Lane, and there is nothing in it showing that the office had been vacated when Lane was appointed; 2dly, it does not appear upon which petition the court acted; 3dly, the notice by law required was not given to the minor children; 4thly, the appointment of Judson as guardian *ad litem* was unauthorized; 5thly, no notice was given to the guardian, as required by law; 6thly, the record does not show that the guardian appeared and answered; 7thly, the commissioners did not give notice of the sale as required by law; 8thly, the notice first published by them described the property as belonging to *A. Robertson*, and the correct notice afterwards given was not published a sufficient time before the sale; 9thly, a portion of the land was described in the notice as being bounded on the east by Claiborne (instead of Franklin) street; 10thly, the order of sale misdescribed the lots; 11thly, the commissioners, as shown by their report, did not conform to the terms of the decree, as to the form of security to be taken by them; and, 12thly, the record does not show any evidence of the necessity for the sale. The same reasons show that the third charge given was erroneous.

The second charge given was erroneous, because it referred the construction of the record to the jury, when it was the duty of the court to determine whether the record showed that the orphans' court had jurisdiction.—3 Ala. 237; 5 Port. 64; 2 Stew. & P. 193; Spivey v. The State, 26 Ala. 90.

The fourth charge was erroneous, because the orphans' court could not act upon two petitions which were inconsistent with each other, and the transcript should have disclosed upon which petition it acted.

The fifth charge was erroneous, because it was improper to refer to oral testimony to ascertain the identity of the land.

That the first charge asked should have been given, see 1 How. (Miss.) 440; 1 Cushm. (Miss.) 550; 5 English, 169.

That the second charge asked should have been given, see 6 Port. 245; 11 Ala. 120; 3 Barb. 341; 7 ib. 45.

That the third and fourth charges should have been given, see 6 Ala. 607; 16 ib. 693; 3 Barb. 341; 2 Coms. 459.

As to the fifth charge asked, see 10 Paige, 366; 1 Munf. 489; 11 Humph. 488; 9 Ala. 793; 12 ib. 268; 15 ib. 768; 16 ib. 238; 4 ib. 248; 2 ib. 662.

As to the sixth charge asked, see 6 Port. 245; 7 Ala. 764; 16 ib. 233; 20 Wend. 249; 7 Barb. 45; 1 Sm. & Mar. 351; 7 ib. 454; 4 Geo. 118.

As to the seventh charge, see 70 E. C. L. R. 260; 6 N. H. 205; 5 Hill, 272; 5 Ired. Eq. 373; 13 Ala. 38; 15 ib. 768.

That the eighth charge should have been given, without any qualification, see 4 Ala. 116; 11 ib. 535, 1059; 13 ib. 222, 537; 16 ib. 720.

Each of the other charges asked asserted a correct legal proposition, and was authorized by the evidence; they should, therefore, have been given.

P. HAMILTON and R. H. SMITH, contra, contended,—

1. That each of the petitions, which were received and acted on by the court, alleged the existence of the fact necessary to give the court jurisdiction—viz., that the personal estate was not sufficient for the payment of the debts; and the jurisdiction of the court, therefore, fully attached.—Lightfoot v. Heirs of Lewis, 1 Ala. 475; Duval's Heirs v. P. & M. Bank, 10 ib. 636, 652. All reasonable intendments will be made to support that jurisdiction.—6 Porter, 219, 262; 1 Ala. 475, 733; 15 ib. 761; 16 ib. 652.

2. These jurisdictional facts appearing of record, irregularities and errors in the proceedings will not be regarded in this suit, which is collateral merely.—6 Porter, 219, 262; 1

Ala. 710, 730; 6 *ib*. 324; 10 *ib*. 652; 2 How. (U. S.) R. 319; 12 *ib*. 385.

3. The transcript from the orphans' court shows all that was necessary for a purchaser to look to—viz., that the case was within the jurisdiction of the court; that the court took actual jurisdiction, and made an order of sale; and that the acts of the commissioners were approved by the court.

4. The main charge given by the court correctly declares the law of the case; and the charges asked by the plaintiffs, which are based upon mere irregularities in the action of the orphans' court, were rightfully refused. The alleged irregularities, except those which refer to the description of the land, raise the question whether the action of the court can be collaterally impeached,—a question which involves the validity of titles to a considerable portion of the lands in this State, and which is settled by the uniform decisions of this court since the case of Wyman v. Campbell, 6 ·Porter, 246, which overruled the doctrine asserted in 2 Stew. 331, and 3 Stew. & P. 355.—Lightfoot v. Doe *d*. Lewis, 1 Ala. 475; Duval v. McLoskey, *ib*. 730; same case, 10 *ib*. 652; Price v. Wilkinson, 10 *ib*. 172; Bonner v. Greenlee, 6 *ib*. 411; Perkins v. Perkins, 7 *ib*. 855; Cox. v. Davis, 17 *ib*. ·714. The objections specified in the 2d, 3d, 4th, 5th and 6th charges asked by the plaintiffs, are specifically overruled in these cases. The same principles have been repeatedly affirmed by other tribunals.—2 How. (U. S.) R. 318; 12 *ib*. 385; 2 Peters, 169; 11 Mass. 227; 11 Serg. & R. 427.

5. The other charges asked refer to the description of the land, and seek to establish as a fatal error the substitution, in some of the proceedings, of Claiborne instead of Franklin street as the eastern boundary. In 1824, Mobile was a small village; and its streets, probably, were mere roads, without any well-known names. Claiborne street is now the ninth street from the river. It will be observed that the land sold consisted of two tracts, each containing three lots, which are uniformly described as adjoining each other; the western boundary of the whole always being. Hamilton street. The distances given always correspond, and show that the land claimed by the defendants under their purchase is the land that was intended; and the commissioners' deed, with the

180       ALABAMA.

Doe, ex dem. Saltonstall and wife, v. Riley and Dawson.

continuous possession under it, clearly establishes the fact. There is no point which must be assumed absolutely as the place of beginning; but, if any point is to have precedence, it must be Hamilton and Dauphin streets, which are mentioned in all the descriptions; and beginning at that point, there is no difficulty in arriving at the result. It is not a case for the application of the rule that natural or permanent monuments control course and distance; it is a question of identity. But, if streets are to govern course and distance, the proceedings authorized a sale of lands from Claiborne to Hamilton street; and the heir cannot complain that a less quantity was conveyed to the purchaser. Besides, the lands claimed by the defendants are confessedly within these limits, and the other portion of the tract may have been conveyed by Bates to some other person.

6. The deed from the commissioners to Bates was part of the defendants' chain of title, and, therefore, properly admitted in evidence.

7. The testimony of Krebs was competent on the question of identity. In questions of boundary parol evidence is admissible.

8. No evidence of the death of Duval was necessary; the order appointing Lane would not be vitiated by the absence of all proof of Duval's death or resignation. Besides, parol evidence was the best proof of the fact.

CHILTON, C. J.—The main points involved in this case have undergone very thorough investigation, and we therefore deem it unnecessary to repeat what has been heretofore said by this court with reference to them. Upon a careful inspection of the record, and after a review of the adjudged cases, most of which have been collated with much ability and research by the respective counsel, we have attained the following conclusions:

1. That the record from the orphans' court of Mobile county affirmatively shows that said court had jurisdiction to make the order for the sale of the land of Alvan Robeshaw, deceased.

2. That having jurisdiction, and its action being in the nature of proceedings *in rem*, and the land having been sold by

Doe, ex dem. Saltonstall and wife, v. Riley and Dawson.

the order of the court, the sale approved by it, and a deed of conveyance executed by the commissioners in accordance with its mandate, such proceedings, though they may abound with errors for which an appellate court would reverse, are nevertheless binding and conclusive until they are vacated. They cannot be collaterally called in question.

3. Although two petitions for the sale of the intestate's land appear in the record, the orphans' court might well have regarded one as amendatory of the other, and have treated them both as constituting but one application. And although recitals in the decrees of courts of special, limited powers cannot give jurisdiction; yet, when the jurisdiction otherwise appears, as in this case by the exhibition of the petitions and the action of the court thereon, we may look to the decree, to see whether its action is predicated upon the petitions separately, or as constituting but one application. In this case, the decree, or order of sale, shows that both petitions were acted upon conjunctively; which, we have seen, the court might well do. That the petition may be identified by the entry, see 1 Ala. Rep. 38, and 4 *ib.* 388, which are analogous in principle, the courts in each case exercising a limited, special jurisdiction *quoad* the subject-matter.

4. We think there was no error in admitting proof of the death of Duval, as a jurisdictional fact, upon which the orphans' court acted in the appointment of the subsequent administrator. If it was erroneous, however, we should hold that it was not prejudicial to the appellant, since Duval was invested with the office of administrator, if installed at all, in virtue of his office as sheriff of Mobile county. As sheriff, he was the executive officer of said probate court; and the court must be presumed judicially to have known when his time expired, and when the office was vacated by death. The matter, therefore, which was shown by the objectionable proof, conceding it to be objectionable, being in contemplation of law within the knowledge of the court, it is more consonant with reason and law to presume the court acted upon its own knowledge that the office was vacant by death of the incumbent, or by the expiration of his official term, than that it should attempt to depose one administrator by the appointment of another to the same office without otherwise removing the former.

5. It follows from what we have said, that the court properly refused the several charges, making the case turn upon certain irregularities alleged to have intervened in the orphans' court proceedings. The alleged want of proper notice of forty days by citation to the heirs; the fact that the record fails to show that the guardian *ad litem* accepted the appointment, and the absence of an answer by him denying the allegations of the petition; the absence of proof of proper notice of the time and place of sale by the commissioners, as well as the action of the court in the appointment of Lane,— are mere irregularities, not affecting the jurisdiction of the court over the subject-matter, and consequently not such as render the sale void. They may furnish good reasons for setting it aside, or for reversing the proceedings in a revising court, but cannot be allowed to vacate it in this collateral proceeding. Were the law otherwise, there would be no security in such sales, and estates would be almost daily sacrificed for want of bidders rash enough to invest their means in such hazardous purchases.—6 Por. Rep. 219; *ib.* 249; *ib.* 262; 1 Ala. Rep. 475-481; *ib.* 730; 6 *ib.* 411-414; 7 *ib.* 855; 10 *ib.* 172-175; *ib.* 722; 17 *ib.* 714; 16 *ib.* 281, and cases there cited.

6. The deed from the commissioners to Bates was properly admitted in evidence, as a link in the defendant's chain of title. If it embraced any portion of the land ordered to be sold, it was, as to that portion, proper; and the objection being general, it was properly overruled.

7. There was not, in our opinion, such indefiniteness of description of the land sold, or such discrepancy between the deed of conveyance, the report of sale, the order to the commissioners, and the petition, as will vacate the proceedings. Although the land is described inartificially, and somewhat differently, in each attempt at the description of it upon the record; still, we think, enough appears to enable the court to see that the land sold and conveyed by the commissioners was comprehended in the description as contained in the application by the administrator for the sale, and in the order of the court awarding or directing such sale. This appearing, it was competent, by parol proof, to fix the boundaries of the tract or portion sold, according

·to the data furnished by the deed, so as to identify the land therein described. There was, therefore, no error in admitting the testimony of Krebs. Indeed he proves what the report of the commissioners already set forth.—viz., that the sale was made upon the land.

8. The appellees' counsel contends, that the streets, being the most durable monuments, must govern in the description. This depends on circumstances.· If the streets are well defined, and designated by some natural or artificial monument, they would doubtless control; but if, in the infancy of a town or city, they are not defined, and are but portions of land dedicated to public use, as described upon some chart or plan of the town or city, requiring themselves to be located or fixed, they would furnish very uncertain guides in arriving at the boundary of other lands.

But, concede that the streets mentioned in the descriptions given of this land must govern, and that courses and distances must yield to them, as in case of permanent monuments; the appellants are placed in no better condition; for, if the tracts are co-terminous, divided by a line running north and south, it is clear that, beginning on Claiborne street in the east, and running to Hamilton street on the west, bounding the land south by Dauphin street, the land sold is embraced within that boundary. That the commissioners may have left unsold the portion lying between Claiborne and Franklin-streets, would not vitiate the sale of the land between Hamilton and Franklin streets. The first petition set out in the record describes the land as extending from Franklin to Hamilton, bounded south by Dauphin, and north by lands of Moore and Farnsworth. This is the land sold and now claimed by plaintiffs. The only confusion in the description here given is in describing the lands as consisting of three lots, and bounding it on the west by the land of Robert Carr Lane as well as Hamilton street. But, if the streets control, then this petition sufficiently describes the land, aided by the parol proof to fix the boundary of the lands of co-terminous proprietors at the north. The second petition, or that immediately following the other in the record, is for the sale of six lots, bounded east by Claiborne, south by Dauphin, west by three lots claimed by R. C. Lane;

and also these three last lots, which extend west to Hamilton street. The order of sale extends from Claiborne to Hamilton, and is for six lots, three of them being in possession of the administrator, and bounded on the west by Hamilton street. The commissioners' report shows the sale upon the premises, of six lots, commencing at Hamilton street and extending east, being co-terminous. This would bring the eastern boundary to Franklin, which they evidently designate, through mistake, Claiborne. But this can make no difference, since the identity is sufficiently shown by the number of the co-terminous lots. If, however, this means of identifying them must yield to the call for the street, Claiborne, why, then, it conforms to the order in the sale of the whole of the land. That they failed to convey the whole, and conveyed only the six lots between Hamilton and Franklin, leaving to the heirs the other six lots between Franklin and Claiborne, is certainly no valid ground of objection on the part of the heirs. So that, in any aspect in which the apparent discrepancies may be viewed, the description as respects the land actually sold, and that claimed by the defendants, is sufficient to sustain the proceedings. The data are sufficiently furnished to identify the land, and there is no actual want of conformity in the proceedings as to this particular land, whatever may be said as to the six lots east of Franklin street between that and Claiborne.

9. We are satisfied that the court might have well instructed the jury, that under the proof, the whole of which is set out in the bill of exceptions, and about which there was no controversy, the title to the land sued for was in the defendants. Such being the case, it were needless to criticise the several charges; the rule being, that where the record affirmatively shows that the plaintiff is not entitled to recover, the court will not reverse for an erroneous charge; nor, *a fortiori*, for refusing to charge.—See 3 Ala. Rep. 599; 6 *ib.* 631; 8 *ib.* 737; 9 Por. 403. In such case, the plaintiffs have sustained no injury.—See cases collected in Reavis' Digest, p. 319, § 71.

It may be that some of the charges given referred to the jury matters of law, as to the construction to be put upon the orphans' court proceedings; but the jury, by their verdict,

JANUARY TERM, 1856.    185

Commissioners of Pilotage, &c., v. Steamboats Cuba, Swan, and J. H. Bell.

found it as the court should have declared it, and so the plaintiffs were not injured.—8 Ala. Rep. 532.

There is no error in the record of which the appellant can complain. Let the judgment be affirmed.