# Friedman & Loveman *v.* Shamblin *et al.*

*Bill in Equity to determine Conflicting Claims and to quiet Title to Land.*

1. *Bill to determine conflicting claims to land and to quiet title thereto; what necessary to maintain such bill.*—Under the act approved December 10, 1892 (Acts of 1892–93, p. 42), to determine conflicting claims to land and to quiet title thereto, it is not necessary, in order to obtain relief, that the complainant should prove title to all of the land claimed by him and described in the bill; and when it appears that the title to a part of the land is in the complainant, while the title to the remainder is in the defendant, the court should so ascertain and declare these facts and decree accordingly.

2. *Same; same.*—In such a case, if the defendant does not claim title to a part of the lands, he should specify in his answer the part disclaimed, and if he fails to do so, he will be treated as claiming the whole; and it is for the court to ascertain from the evidence and to determine by decree the rights of the parties interested to the land involved in the suit.

3. *Statute of limitations; wrongful claim of interest; failure of administrator to assert the statute and object to the allowance of interest does not render void a decree of insolvency.*—The failure of an administrator to assert the statute of limitations against, and to object to the allowance of interest on, a claim presented against his estate, which has been barred by the statute, and upon which, under the law then in force, interest did not accrue, does not, in the absence of fraud or col-

[Friedman & Loveman v. Shamblin *et al.*]

lusión, operate to render void a decree declaring the estate insolvent, even though said estate would not have been insolvent, but for the allowance of such claim.

4. *Sale of decedent's land under probate decree, upon petition of administrator; irregularities in proceedings not available on collateral attack.* When a petition by an administrator, filed in the probate court for the sale of decedent's lands for the payment of debts of the estate, avers facts sufficient to give the court jurisdiction, as required by statute, and the land is sold by the administrator under a decree of the court, the sale confirmed, the purchase money paid and a deed executed to the purchaser, in obedience to the court's mandate, the action of the court in such case is conclusive until vacated in a direct proceeding, and neither the sale nor the title of the purchaser thereunder can be collaterally impeached on account of any irregularities in the proceedings.

5. *Same; sufficiency of petition.*—Where, pending an administration in the probate court, the administrator files a petition for the sale of lands of the estate for the payment of debts, which avers all the necessary jurisdictional facts, but before this application is acted on, the estate is declared insolvent, and subsequently the administrator files another petition, praying that the lands be sold for the payment of debts, as provided by the statute for the sale of the lands of an insolvent estate, and this latter petition is, in itself, totally insufficient for the purpose of conferring jurisdiction, but it expressly refers to the former application, which remains unacted on, it is proper for the court to regard the two petitions as amendatory of each other, and as constituting but one petition, and to look to both for the averment of the jurisdictional facts necessary to authorize it to act.

6. *Same; when verification of report of insolvency does not invalidate sale.*—The verification by the administrator of the report of insolvency, though required by the statute and should always be made, is not a jurisdictional fact; and its absence is a mere irregularity not available on collateral attack to invalidate a sale of the lands of the estate for the payment of debts, which was ordered by the court, as provided by statute authorizing a sale of lands of an insolvent estate.

7. *Same; when estate insolvent; proof of debts.*—The statute authorizing the sale of lands for the payment of debts on the application of the executor or administrator after the estate has been declared insolvent, "without taking any evidence by deposition as in chancery cases, to show the necessity of the sale," (Code of 1886, §§ 2258-2259 ; Code of 1896, §§ 326-327), dispenses with the necessity of taking evidence in this manner, or in any manner to show necessity for sale, and the failure to take such evidence or the failure of the record of the probate court to show that such evidence was taken, is not an irregularity, and does not, in any way, affect the validity of the sale, which was ordered and made.

8. *Same; failure to give notice to heirs does not affect validity of sale.* Where, after an estate is declared insolvent, an application is filed

[Friedman & Loveman v. Shamblin *et al.*]

by the administrator to have the lands of the estate sold for the payment of debts, the failure to give to the heirs notice of the filing of the application, and of the day appointed to hear the same as required by statute, or the failure to appoint a guardian *ad litem* to represent the interest of the minor heirs, are mere irregularities, which do not invalidate the sale or the title acquired thereunder, when collaterally attacked, if the application contained the necessary averments to give the court jurisdiction.

9. *Fraud in the procurement of decree; burden of proof.*—Fraud will not be imputed from suspicious circumstances alone, which are susceptible of a hypothesis consistent with honesty and innocence; and in a suit where relief is sought by reason of alleged fraud in the procurement and rendition of a decree of insolvency and an order for the sale of land, the burden is upon the party seeking to vitiate such decree and sale, to establish the fraud alleged by a clear preponderance of the evidence; and such burden is not met and sustained simply by the testimony of one witness tending to establish the facts alleged to constitute the fraud, when these facts are positively denied and refuted by the party charged with the fraud.

10. *Same; sufficiency of evidence; presumption as to alteration of instrument.*—In a suit, where relief is sought by reason of alleged fraud in the procurement and rendition of a decree of insolvency, and an order for the sale of land of decedent's estate in a probate court proceeding, and there appears in the original papers filed in the probate court, various interlineations, erasures and alterations of dates, in the absence of evidence to show when, by whom or under what circumstances such changes were made, it will be presumed that they were authorized amendments made before the order of sale, or, at least, that they were not fraudulently made.

11. *Sale of decedent's land under probate decree, upon petition of administrator; conclusiveness of proceedings under such order of sale.*—A proceeding before a probate court for the sale of land of a decedent's estate is a proceeding *in rem* and not *in personam*; and where the record of the probate court shows affirmatively that by a petition setting forth the necessary jurisdictional facts, the court acquired jurisdiction to order the sale of the land of a decedent's estate, that the land was sold by the administrator under its order, the sale confirmed, the purchase money paid, and a deed executed to the purchaser in obedience to the court's mandate, the action of the court is conclusive, and no errors or irregularities in the proceeding will avail to invalidate the decree and sale thereunder, except upon a direct appeal, or in a proceeding in the court rendering the decree, instituted before the expiration of the term at which it was rendered.

12. *Same; such decree and order of sale can not be set aside by cross bill filed in another suit.*—On a bill filed to determine a claim to real estate and to quiet the title thereto, where the complainant claims title from a purchaser at the sale of a decedent's land by order of the probate court, a cross bill, filed by the defendants to the suit, which

[Friedman & Loveman v. Shamblin *et al.*]

seeks to set aside the probate decree and order of sale by reason of irregularities or errors in the proceeding, after the court acquired jurisdiction, constitutes a collateral attack upon such decree and sale, and will not be entertained for the purpose of invalidating the sale or the title of the purchaser acquired thereunder.

APPEAL from the Chancery Court of Tuscaloosa.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed by the appellants against the appellees. The purpose of the bill and the facts of the case are set forth at length in the opinion.

Upon the final submission of the cause, on the pleadings and proof, the chancellor rendered a decree denying the relief prayed for by the complainants and ordered the bill dismissed. From this decree the complainants appeal, and assign the rendition thereof as error.

ORMOND SOMERVILLE, for appellants.—The court had jurisdiction in this cause. This was given by the act approved December 10, 1892.—Acts of 1892-93, p. 42. The evidence shows conclusively that at and before the time of filing the bill in this case, the lands in controversy were absolutely unoccupied by any one, being in a wild and uncultivated condition. Therefore, under the well established principle of the law, a constructive possession will be imputed to the legal title.—*Farley v. Smith*, 39 Ala. 38; *Shipman v. Baxter*, 21 Ala. 456.

It was shown, without dispute, that complainants held an undivided one-half interest in a part of the land involved in the controversy. As to the other one-half interest in such part of the entire interest in the remaining tract of land involved in the suit, complainants' title depended upon the validity of the probate proceedings, and the validity of the sale, as ordered thereunder. The probate court proceedings and the sale as made by the administrator were valid and binding as between the parties in this suit.—Code of 1886, §§ 2111-2126; §§ 2222-2261; *Haydenfeldt v. Towns*, 27 Ala. 423; *Hine v. Hussey*, 45 Ala. 496; *Thornton v. Moore*, 61 Ala. 347; *Eubank v. Clark*, 78 Ala. 73; *Clark v. Knox*, 70 Ala. 607; *Garrett v. Bruner*, 59 Ala. 513; *Wilburn v. McCalley*, 63 Ala. 436; *Foxworth v. White*, 72 Ala. 224; *Pollard v. Hanrick*, 74 Ala. 334; *Wartensleben v. Haithcock*, 80 Ala. 569; *Goodwin v. Sims*, 86 Ala. 102;

*Duval v. McCloskey*, 1 Ala. 708 ; *Saltonstall v. Riley*, 28 Ala. 164 ; *Lowe v. Guice*, 69 Ala. 80.

JONES & BROWN, *contra.*—The attack on the probate insolvent proceedings, and those to sell the land in this case, was not collateral and incidental, as the court concludes ; but it was a direct attack and test of the appellants' bill, the prayer of it, even, was for the chancery court to decide whether the proceedings were valid or void, it alleging that the title of appellants depended on their validity and that appellees' title or claim was based on the theory that the proceedings were void; and the bill asked the chancery court to decide this very question.

There are no other parties to insolvency proceedings than the personal representative and the creditors. As to the next of kin and legatees, the record of insolvency proceedings is *"res inter alios acta,"* not affecting their rights and not evidence against them of any fact ascertained by it.—*Kilgore v. Kilgore,* 103 Ala. 621 ; *Randle v. Carter*, 52 Ala. 95 ; *McGuire v. Shelby*, 20 Ala. 456 ; *Bank v. Ellis*, 30 Ala. 478 ; *Edwards v. Gibbs*, 11 Ala. 292.

BRICKELL, C. J.—This is a bill in which the appellants were complainants, filed under the provisions of the act approved December 10, 1892, (Acts of 1892-93, p. 42), authorizing any person who is in the peaceable possession of land, whether actual or constructive, claiming to own the same, when his title thereto or to any part thereof is denied or disputed, to maintain a suit in equity to determine the conflicting claims which may be preferred, and quiet the title to the lands. At the filing of the bill, neither of the parties thereto was in the actual possession of the land in controversy, so far as appears from the evidence, but the defendants had some time previously taken possession of a part of it, and were claiming title to the whole. The constructive possession of the complainants, which exists, in contemplation of law, in the holder of the title, was, however, a sufficient possession upon which to found their right to maintain the bill. In a proceeding of this character it is not necessary for the complainant to prove title to all the land claimed by him and described in the bill in order to obtain relief. The statute contemplates

the granting of relief as to such of the lands as the complainant shows title to, and when it appears that the title to a part of the land is in the complainant, while that to the remainder is in the defendant, the court should ascertain and declare these facts and decree accordingly. If the defendant does not claim title to a part of the lands, he should specify in his answer the part disclaimed, and if he fails to do so, he must be treated as claiming the whole. The evidence is without dispute, that complainants had a superior title to an undivided one-half interest in the S. E. ¼ and the S. W. ¼ of S. E. ¼ of section 1, township 21, range 8 west, and of consequence they were entitled to a decree as to such undivided one-half interest. The court erred, therefore, in dismissing the bill and rendering a decree in favor of the defendants for the whole of the lands in controversy.

Complainants claimed title to the other lands described in the complaint through an administrator's sale of the lands belonging to the insolvent estate of William Shamblin, deceased, in the year 1882. The defendants, claiming title as the children and heirs at law of said William Shamblin, charged that the estate owed no debts at the time of the sale or application therefor, that administration on the estate was unnecessary, that the claims against the estate reported by the administrator were simulated and fraudulent, having never been presented to the administrator nor filed as claims against the estate, and that complainants and their attorney had fraudulently procured the grant of administration on said estate and the rendition of a decree of insolvency, in order to obtain possession of the lands in controversy. It is further sought to impeach the validity of the administrator's sale on the ground of various irregularities in the proceedings which, it is contended, rendered it absolutely void.

The charge of fraud on the part of complainants or their attorneys in connection with the administration of the estate, or the procuring and rendition of the decree of insolvency, and the sale of the lands, finds no support in any tendency of the evidence. The undisputed evidence is that two years after the administrator's sale, complainants purchased the land from the purchaser at said sale, and that they had no knowledge whatever of the probate proceedings. If any fraud was

perpetrated,—and the evidence, in our opinion, fails to show any,—these complainants are not shown to have had even the remotest connection with it. Nor does the evidence support the charge that the claims against the estate, as reported by the administrator, were simulated and fraudulent. The only claims mentioned in the administrator's report of insolvency were one in favor of John Sumner for the sum of $100, which was not proven nor allowed, and one for $600 or more in favor of Mary J. Williams, the widow of the intestate and mother of the defendants, while the value of the property belonging to the estate was reported to be less than $600. Notwithstanding the latter now testifies that the estate owed her nothing, and that she never presented any claim against it, we are satisfied from the evidence that she had such claim, that it was duly presented to the administrator by her, and that the same was paid to her out of the proceeds of the sale, partly in cash and the balance by a credit allowed on the purchase money due for a part of the lands of the estate bid off and purchased by or for her at the sale. This claim had its origin, in part, in a purchase by her husband in his own name of lands belonging to her father's estate at an administrator's sale thereof, payment for which was made with her distributive share of said estate. This was a use by her husband of the *corpus* of her statutory estate, and created a debt in her favor. The only infirmity in the claim was that an action thereon would have been barred by the statute of limitations, if asserted, and that it was increased by the addition of interest, for which, under the law then in force, the husband incurred no liability by the use of the wife's money. The debt, however, still existed as a legal and moral obligation against the estate, and the failure of the administrator to assert the statute of limitations and object to the allowance of interest, could not, in the absence of fraud or collusion, operate to render void the decree of insolvency.

Eliminating the issue of fraud raised by the answer, the only question remaining to be considered is that of the validity *vel non* of the probate proceedings under which the sale was had. The original file in the probate court relating to the proceedings had therein to sell the lands belonging to the estate of William

[Friedman & Loveman v. Shamblin *et al.*]

Shamblin, deceased, were sent to this court along with the transcript by order of the chancellor, and from it appear the following facts : On February 1, 1882, the administrator of said estate filed an application, verified by affidavit, for the sale of all the lands of the estate for the payment of debts, setting forth therein the names, residences and ages of the heirs, all of whom were minors, and a full description of the lands, and averring that the estate was indebted, that there was no personal property belonging to the estate, and that it was necessary to sell the lands for the payment of the debts. On March 18, 1882, he filed a report in writing, not verified by affidavit, stating that the estate was to the best of his knowledge and belief insolvent, together with a statement of all the property belonging to, and the claims against, the estate which had come to his knowledge, which statement showed the value of the property to be $580, and the amount of the claims to be $600 or more. The 21st day of April, 1882, was set to hear and determine the same, and notice was ordered to be given to the creditors, as required by the statute, and on said date a decree was rendered declaring the estate insolvent, appointing June 6, 1882, as the date for the administrator to make final settlement, and ordering notice of the decree to be given in the manner required by the statute. Subsequently, on a date which it is impossible to determine by an examination of the original petition, but which is shown by the record to have been February 1, 1882, which is clearly a mistake, the administrator filed a petition, verified by affidavit, reciting that the estate had been declared insolvent, and that a former application had been filed for an order for the sale of the lands of the estate for the payment of debts, which had not been acted on by the court, and praying that "an order be granted decreeing that said lands shall be sold for the payment of debts, according to the laws made and provided in the cases of insolvent estates," but no lands were described therein, nor were the names, residences or ages of the heirs stated. On June 27, 1882, a decree was rendered ordering the sale of the lands which recited that "due and legal notice of the nature of, and time set to hear, the petition has been given as required by law and the previous orders and decrees of this court, made and entered in the premises, by citations person-

ally served upon the heirs at law of William Shamblin, deceased, more than ten days before this day;" and that "said estate has been declared insolvent, and the petition for this proceeding amended so that said real estate hereinafter mentioned may be sold to pay the debts of said estate." On August 28, 1882, the administrator reported the sale of the lands and the payment of the purchase money, and on October 1, 1882, the sale was confirmed, and deeds ordered to be made to the purchasers.

The principal objection to the validity of this sale relied on by appellees are, *first,* that the report of insolvency was not verified by affidavit; *second,* that they had no notice of the sale or the application therefor, were not parties to the proceedings, and were not represented either by counsel, guardian or guardian *ad litem;* and, *third,* that no evidence was taken by deposition, as in chancery proceedings, to show the necessity of the sale, as provided by section 2458, Code of 1876, then in force. It has long been the settled doctrine of this court that such irregularities and defects in the proceedings to sell the lands of a decedent for the payment of debts, are unavailable, in a collateral proceeding, to impeach the validity of the sale or the title of one claiming under it. This doctrine is a rule of property, which judicial power cannot change. When the record affirmatively shows that the court had jurisdiction to order the sale, by a petition setting forth the necessary jurisdictional facts, that the land was sold by an administrator under its order, the sale confirmed, the purchase money paid, and a deed executed to the purchaser in obedience to the court's mandate, the action of the court is conclusive until vacated in a direct proceeding, and neither the sale nor the title of the purchaser acquired thereunder can be collaterally impeached on account of any irregularities in the proceedings.—*Moore v. Cottingham,* 113 Ala. 148; *Kent v. Mansel,* 101 Ala. 334; *Thompson v. Boswell,* 97 Ala. 570; *Goodwin v. Sims,* 86 Ala. 102; *Pettus v. McClannahan,* 52 Ala. 55; *Satcher v. Satcher,* 41 Ala. 26; *Duval v. McLoskey,* 1 Ala. 708. The lands in controversy were sold on a petition filed after the estate had been declared insolvent. The petition filed for the purpose was in itself totally insufficient, but it expressly referred to the former application on file and not yet

acted on, which was full and sufficient in all essential averments to confer jurisdiction, and prayed that the land be sold for the payment of debts as provided by the statute authorizing the sale of lands of an insolvent estate. It was proper .for. the court to regard the two petitions as .amendatory of each other, the two constituting but one petition, and to look to both for the averment of jurisdictional. facts .necessary to ,authorize it to act.—*Doe ex dem. Saltonstall v.. Riley,.* 28 Ala. .181.: This the court did, as .appears ·from .the decree, and considering both petitions, it cannot be doubted that the facts averred were sufficient to confer jurisdiction. The verification of the report of insolvency by the affidavit of the administrator, though it is required by the statute, and should always be made, is not a jurisdictional fact, and its absence is a mere irregularity, not available on a collateral attack. It is by the facts ·alleged, and not their verification, that jurisdiction is acquired.—*Wartensleben v. Haithcock,* 80 Ala. 569. · The petition being, therefore, one for the sale for payment of debts of lands of an insolvent estate,. the subsequent proceedings were to be governed by the provisions of the act of February 13, 1879, (Acts, 1878-79, p: 164), now constituting sections 2258, 2259, Code of 1886 ; Code of 1896, ·§§ 326-327.) This act expressly provides that "upon the application of an executor or administrator of an estate which has been declared insolvent, for an order for the sale of lands belonging to the estate for the payment of debts, he shall be allowed to obtain such order without taking any evidence by deposition, as in chancery cases, to show the necessity of the sale," states what the application shall contain, and requires notice of the filing of the application, and of the day appointed to hear the same, to be given to the heirs or devisees by publication once a week in some newspaper published in the county. This act having been. adopted while section 2458, Code of 1876, was in force, rendering void an order for the sale of lands of an estate, ·when minors or persons of unsound mind are interested in such estate, unless evidence showing the necessity of such sale has been taken by deposition, as in chancery proceedings, must be construed as dispensing with the necessity of taking evidence in this manner, or in any manner, when the application is made after the decree

declaring the estate insolvent, even though some of the heirs may be minors.—*Meadows v. Meadows*, 78 Ala. 240. The failure of the record to show that such evidence was taken, or the failure to take such evidence, was not even an irregularity. Nor can the order of sale be declared void in this proceeding, because of the failure to give to the heirs notice of the filing of the application and of the day appointed to hear the same, as required by statute, or because of the failure of the record to show that a guardian *ad litem* was appointed to represent the interests of the minor heirs. It has been expressly held by this court, the proceeding being *in rem*, and not *in personam*, if the application contains the necessary averments to give the court jurisdiction, errors thereafter committed by the court, such as failure to notify the parties in adverse interest, or to appoint a guardian *ad litem*, or the failure of the guardian appointed to answer and deny allegations of the petition, are mere irregularities which will not avail, on collateral presentation, to avoid the order or title acquired by a sale under it.—*Field v. Goldsby*, 28 Ala. 218 ; *Satcher v. Satcher*, 41 Ala. 26, 48 ; *Wilburn v. McCalley*, 63 Ala. 445. Our conclusion, is that the order for the sale of the lands in controversy was not void, that the purchaser thereunder acquired a good title, which is now in the appellants, and that the court below should have rendered a decree determining the conflicting claims to all the land in favor of appellants, instead of in favor of appellees as was done.

The decree of the chancellor must be reversed, and a decree will be here rendered in conformity to this opinion.

## On Application for Rehearing.

In response to the application for a rehearing we have very carefully considered all the evidence in the record and in the original probate papers sent up to this court and the questions of law involved. There are but two primary questions involved in the case : *First*, whether there was fraud in the procurement and rendition of the decree of insolvency and the order for the sale of the land ; and, *second*, whether the order for the sale of the land was void on account of the irregularities pointed

[Friedman & Loveman v. Shamblin *et al.*]

out.   The burden was clearly on the appellees to establish the fraud alleged by a clear preponderance of evidence.   Fraud will not be imputed from suspicious circumstances alone, susceptible of a hypothesis consistent with honesty and innocence, nor will the burden of proving the issue be considered sustained simply by the testimony of one witness tending to establish the facts alleged to constitute the fraud, when these facts are positively denied and refuted by the party charged with the fraud.   The only testimony in the record tending to show fraud is that of Mrs. Williams, the widow of William Shamblin, who states that she never had, any claim against the estate of her husband, never presented any claim to the administrator, and never received anything from the estate except the homestead that was set apart to her.   It is true, there appear in the original papers filed in the probate court various interlineations, erasures and alterations of dates, but no testimony was offered to show when, by whom, or under what circumstances, these changes were made.   In the absence of such evidence, it must be presumed that they were authorized amendments made before the order of sale, or, at least, that they were not fraudulently made.   Against this evidence is the testimony of the administrator and that of his attorney.   The latter testified that he had personal knowledge of the nature and amount of the larger part of Mrs. Williams' claim, that he made out the claim at her request, she furnishing him with all the items, and that she presented it to the administrator, and the same was in fact filed in the probate office. This was not hearsay evidence, nor testimony as to transactions with, or declarations by, a deceased person, as contended by counsel, but was legal and competent evidence on the issue involved.   The testimony as to the presentation of the claim is corroborated by the administrator, who also testified that upon a final settlement of the insolvent estate he paid to Mrs. Williams, or to her husband in her presence, a part of the claim in cash, accepted and paid an order on himself given by her to a third person, and the balance he allowed her as a credit on the purchase money of a part of the land sold under the order of sale in controversy, which, as the report of sale shows, was purchased by her at the sale, and this evidence is corroborated in part by the

receipts in evidence. The evidence was utterly insufficient to establish the charge of fraud, and we adhere to our former conclusion, that the charge of fraud finds no support in any tendency of the evidence.

There being no fraud in the procurement and rendition of the decree of insolvency, the question whether the estate was, in fact, insolvent, was not one that could properly be considered and decided on this appeal. That was a question exclusively for the determination of the probate court, and its determination, upon a report and petition sufficient to give it jurisdiction to act, was *res adjudicata*, and could not be reviewed or reopened, except in connection with an investigation as to the existence of fraud, in the chancery court, or in any other court, except upon an appeal sued out to reverse the judgment of the probate court.—*Pettus v. McClannahan*, 52 Ala. 60. This court did not, therefore, in the former consideration of the case, find that the estate was in fact insolvent, but simply that the probate court had so decreed, and that no fraud was shown to have been employed in the procurement and rendition of the decree.

If a judgment or decree is not void for want of jurisdiction, and its invalidity is not apparent on its face, neither the court rendering it, at a term subsequent to its rendition, nor any other court, in the absence of fraud, except an appellate court on a direct appeal, has the power to vacate and annul it. When the validity of an order for the sale of a decedent's land is attacked, whether by a bill in chancery to annul it, or by a petition in the court rendering the decree, at a subsequent term, to vacate it, the primary inquiry is, had the probate court jurisdiction to render the decree for the sale? If it had such jurisdiction, no mere irregularities in the subsequent proceedings will avail to invalidate the decree and sale thereunder, except upon a direct appeal, or a proceeding in the court rendering the decree instituted before the expiration of the term at which it was rendered.—*Pettus v. McClannahan*, 52 Ala. 57 ; *Stevenson v. Murray*, 87 Ala. 442 ; *Satcher v. Satcher*, 41 Ala. 26 ; *Lightfoot v. Lewis*, 1 Ala. 479. And by jurisdiction is here meant jurisdiction of the *thing*, and not of the persons owning the thing. The doctrine established by the early decisions of this court, and adhered to because it

has long been a rule of property, is, that a proceeding before the probate court for the sale of lands of a decedent is *in rem*, and not *in personam*; that the jurisdiction of the court attaches upon a petition setting forth a statutory ground of sale, and does not depend on the giving of notice to the heirs; and that the order of sale is not void, although the proceedings abound in errors, if the petition contain the necessary jurisdictional allegations.—*Satcher v. Satcher, supra*; *Lyons v. Hamner,* 84 Ala. 198; *Moore v. Cottingham,* 113 Ala. 162, and cases cited. When jurisdiction is shown, the same presumptions in favor of the correctness of the subsequent proceedings are indulged as in proceedings of a court of general and unlimited jurisdiction. The petition for the sale of the land of the insolvent estate was properly considered in connection with the former petition, to which it referred, and the two petitions, as shown by the decree, were acted on as one application for the sale of the lands of the insolvent estate, and together they contained all the averments essential to confer jurisdiction.—*Saltonstall v. Riley,* 28 Ala. 181. Thus it appears that the probate court had jurisdiction to order the sale, and the sale was had upon an application for the sale of the land of an insolvent estate after the decree of insolvency. It was not necessary, therefore, to take testimony in any manner to show the necessity of the sale. Code of 1886, § 2258; Code of 1896, § 326; *Meadows v. Meadows,* 78 Ala. 240. And the other irregularities insisted upon were not such as could invalidate the sale or the title of the purchaser acquired thereunder. The cross-bill of appellees was a collateral attack within the meaning of the term as used in our former decisions denying the invalidating effect, upon such attack, of mere irregularities in the proceedings after the court had acquired jurisdiction. In *Satcher v. Satcher, Pettus v. McClannahan,* and *Stevenson v. Murray,* cited above, the attack was by petition in the court rendering the decree to set aside and annul the sale on the ground of similar irregularities, as in each case it was held that such irregularities were unavailable on such proceedings. They are equally unavailable on a bill, or cross-bill, in chancery filed for a like purpose, in the absence of fraud. We have been unable to discover any error in the conclusions reached on the former consideration of the case.