# SATCHER *vs.* SATCHER'S ADM'R.

### [APPLICATION TO SET ASIDE SALE OF DECEDENT'S LANDS.]

1. *Sale of decedent's lands for division; nature of proceeding, and jurisdiction of court.*—Repeated decisions of this court have settled the doctrine, that a proceeding before the probate court for the sale of a decedent's real estate, for equitable division among the heirs, is *in rem ;* that the jurisdiction of the court attaches on the filing of a petition, stating therein a statutory ground for the order of sale ; and that where the jurisdiction of the court has attached on the filing of such a petition, mere errors and irregularities in the proceedings do not render void the order of sale.

2. *Same; sufficiency of petition.*—An averment in the petition, that the lands can not be " fairly, beneficially, and equitably divided" without a sale, is a substantial compliance with the statutory requisition that they "can not be equitably divided," (Code, § 1867,) and is sufficient to sustain the jurisdiction of the court on a motion to set aside the sale.

3. *Same, as affected by act of February 7, 1854, "to regulate the sale of real and personal property by executors and administrators."*—The principles above stated are not in any manner changed or affected by the provisions of the act approved February 7, 1854, (Session Acts, 1853-4, p. 55,) entitled "An act to regulate the sale of real and personal property by executors and administrators." The word *act,* as used in the fifth section of that statute, means the fifth section only, and not the whole act. (BYRD, J., *dissenting.*)

APPEAL from the Probate Court of Henry.

IN the matter of the estate of Herrin M. Satcher, deceased, on the application of Jesse Satcher and others, claiming as heirs-at-law of said decedent, to set aside a sale of his real estate, which had been previously made by his administrator, W. T. Kirkland, under an order of said probate court. The administrator's petition, on which the order of sale was founded, and which was filed on the 8th September, 1863, was under oath, and in the following words :

"To the honorable E. W. Teague, judge of the probate court in and for said county: The undersigned, administrator of the estate of Herrin M. Satcher, deceased, represents

unto your honor, that said decedent died seized and possessed of the following described lands, lying and being in said county, to-wit: the S. W. $\frac{1}{4}$ of S. W. $\frac{1}{4}$ section 23; S. E. $\frac{1}{4}$ of N. E. $\frac{1}{4}$, W. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ of section 22," &c.; describing all the lands by similar abbreviations, and stating the number of acres in each tract. "He further represents, that the heirs and distributees of said estate are, Herrin F. Satcher, of full age; Nancy Satcher, wife of James Satcher, and the children of James Satcher, deceased; Lucretia Grace, wife of James H. Grace, of full age, and Jesse Satcher, a minor; all of whom reside in said county, and none of whom are of unsound mind. He alleges, that a sale of said lands is necessary, upon the ground that said lands can not be fairly, beneficially, and equitably divided among the heirs and distributees of said estate, without a sale thereof. Wherefore, he prays for an order to sell said lands, according to law, and upon such terms as to your honor may seem meet and proper," &c.

On the day on which the petition was filed, the probate court made an order in the following words: "Came W. T. Kirkland, administrator of the estate of Herrin M. Satcher, and filed his application, under oath, for the sale of the lands of said deceased, which are described in said application according to law; giving the names and residences of the heirs of said deceased, and alleging that a sale of said lands is necessary, upon the ground that the same can not be fairly, equally, and equitably divided among the heirs of said deceased, without a sale thereof. And thereupon it is ordered, that the second Monday of October next be set to hear and determine said application; that J. M. B. Kelly be, and he is hereby, appointed guardian *ad litem* of Jesse Satcher, a minor heir of said deceased; and that citation be served upon him, as well as upon Nancy Satcher, for herself, and as the custodian of the minor children of James Satcher, deceased, and Lucretia Grace, heirs-at-law of said deceased, of full age; and that notice of this application, and of the day set for hearing, be given, by posting notices at the court-house and three other public places in said county, for three successive weeks before said day."

A citation was duly issued to said Kelly, as guardian *ad*

*litem,* service of which was accepted by him on the 10th September, 1863. On the same day on which the petition was filed, the administrator filed interrogatories to Jeptha Grace and Thomas Brown, as witnesses to prove the averments of the petition; and on the 10th September, service of these interrogatories was accepted by said Kelly, Mrs. Nancy Satcher, and one J. M. Saunders, as the administrator of James Satcher, deceased, all of whom consented that a commission might issue immediately; but a copy was not served on Mrs. Lucretia Grace until the 18th September. A commission was issued on the 30th September, under which the depositions of the witnesses were taken on the 10th October, 1863. Their answers were in these words: "To the first interrogatory they say, that they are acquainted with the lands belonging to the estate of said deceased. To the second interrogatory they say, that they are acquainted with the heirs and distributees of said estate —Nancy Satcher, wife of James Satcher, deceased; Lucretia Grace, wife of Henry Grace, and daughter of said deceased; and Jesse Satcher, minor son of said deceased. To the third interrogatory they say, that a fair, beneficial, and equitable division of said lands can not be made, without a sale of the same."

On the 12th October, 1863, the court granted the following order of sale: "Upon this day, (it being the day set to hear and determine the application of W. T. Kirkland, administrator of the estate of Herrin M. Satcher, deceased, for the sale of the lands of said deceased for division,) came the said W. T. Kirkland, and moved the court to grant his said application. And it appearing to the court that citation herein has been served upon the heirs of said deceased of full age, and upon J. M. Kelly, guardian *ad litem* for the minor heirs of said deceased, at least ten days before this day; and that notice has been given, by posting notices at the court-house and three other public places in said county, for three successive weeks before this day; and the allegations of said petition being sufficiently proved, by the testimony of two disinterested persons, taken upon interrogatories, which are of record; and no objections being made,—it is ordered, that said administrator may sell

the said lands, after giving notice of the time and place of sale, by posting notices at the court-house and three other public places in the county, for at least thirty days, at Abbeville in said county, for cash, and that he make due return thereof to this court. It is further ordered, that all papers on file, relating to this case, be recorded."

The sale was made by the administrator on the 7th December, and was reported to the court on the same day ; and the court thereupon rendered the following decree : " This day came W. T. Kirkland, administrator of the estate of Herrin M. Satcher, deceased, and reported in writing, under oath, that in pursuance of an order of said court, after duly advertising, he proceeded on the 7th day of December inst., and sold at public outcry, to the highest bidder, for cash, at Abbeville, all of the lands belonging to said deceased ; at which time and place, James W. Balkum became the purchaser of that portion of the lands of the deceased known as 'the mill tract,' containing about six hundred and eighty acres, more or less, lying and being in said county, at and for the sum of $6,735, and that said purchaser has paid said amount to him ; and further, that, at the same time and place, M. A. Bell and W. T. Kirkland became the purchasers of the N. E. ¼ of sec. 23, T. 1, R. 28, containing one hundred and sixty acres, more or less, at and for the sum of $205, and has paid said amount to the administraior of said estate ; and further, that, at the same time and place, Elijah W. Teague became the purchaser of that portion of the lands of said deceased known as ' the pine lands' of said deceased, containing about seven hundred and sixty acres, more or less, at and for the sum of $3,410, and has paid said amount to the administrator of said estate ; and praying for an order ratifying and confirming said sale, and for an order appointing some suitable person or persons to make titles of said lands to said purchasers. And it appearing to the satisfaction of the court that said sale was fairly and legally made, and that said lands sold for a sum not greatly disproportionate to their true value, and that the purchase-money of the same has been fully paid and discharged,—it is therefore ordered by the court, that the said report be received, and that the

said sale of said lands be ratified, and in all things fully confirmed by authority of this court. It is therefore ordered, that W. T. Kirkland, administrator of said estate, do convey by proper deeds of conveyance, to said Elijah W. Teague and James W. Balkum, all right, title and interest, which said deceased had, in and to said lands respectively purchased by them, at the time of his death. It is further ordered, that L. L. Teague be, and he is hereby, appointed commissioner to make title of said lands purchased by said M. A. Bell and W. T. Kirkland, conveying to them all right, title and interest, which said deceased had, in and to said lands, at the time of his death. It is further ordered, that all papers on file relating to this proceeding be recorded and filed."

The petition to set aside the sale was filed by Jesse Satcher and the minor heirs of James Satcher, deceased; but the record does not show at what time it was filed. It alleged, that the order of sale, and the sale, were null and void—" 1st, because the administrator's application for the order of sale did not accurately describe the lands belonging to said decedent ; 2d, because said petition did not give the names of the heirs and distributees, and their places of residence ; 3d, because said petition did not otherwise conform to section 1868 of the Code ; 4th, because forty days did not elapse *from* the filing of said petition and the granting of the order to sell said lands ; 5th, because, on the hearing of said petition, no guardian *ad litem* was appointed to represent the interest of William L. Satcher, Joseph H. Satcher, and James L. Satcher, minor children of James Satcher, deceased, nor were they notified of the same ; 6th, because said Jesse Satcher, being at that time over the age of fourteen years, was not notified of said application, and of the day appointed for the hearing of the same, as by law required ; 7th, because said guardian *ad litem* did not deny in writing the allegations of said petition ; 8th, because copies of the interrogatories were not served upon the heirs of said decedent, as by law required, nor were said interrogatories taken as in chancery cases ; 9th, because citations were not served on the heirs and distributees of full age, residing in the State, notifying them of the

application, and of the day appointed for hearing the same, ten days before the day appointed for the hearing; 10th, because J. M. B. Kelley, the guardian *ad litem* for Jesse Satcher, did not consent to act as such, and did not act as such on the hearing; 11th, because the judge of probate, who confirmed the sale of said lands, was the purchaser of seven hundred and sixty acres of said lands, as appears from the report of the sale, and therefore the sale to him is void; 12th, because the interrogatories are defective, in not setting forth the lands as described in the petition, and the answers thereto are not responsive; 13th, because the depositions taken upon said interrogatories, and upon which the court ordered the sale, did not sustain and prove the allegations of the petition; 14th, because the order of sale is void on its face, as it does not show that the minor heirs were represented on the hearing by a guardian *ad litem*, and because it does not recite the facts necessary to give the court jurisdiction; 15th, because the order of sale does not set forth the lands as described in the petition, and is void for uncertainty."

On the hearing of the petition, on the 8th October, 1866, as the bill of exceptions states, "the petitioners introduced in evidence all the records of the court in reference to the cause, to prove the allegations of their petition; and it was agreed between the attorneys on both sides, and admitted as in evidence, that the minor children mentioned in the records as those of James Satcher, deceased, were the three petitioners, William L. Satcher, Joseph H. Satcher, and James L. Satcher. This being all the evidence in the cause, the court dismissed the petition;" to which the petitioners excepted, and which they now assign as error.

On the 14th August, 1866, a petition was filed in said probate court, by James H. Grace, "in right of his wife, Lucretia Grace, and as administrator of Herrin F. Satcher, deceased, (who died without wife, child, children, or their descendants,) and as the next friend of Jesse Satcher, a minor, and also of Levi, Joseph, and James Satcher, (minor children of James Satcher, deceased,)" for the purpose of setting aside the sale of the same lands. The petition

was duly sworn to by said James H. Grace, and asked that the sale might be set aside "more particularly for the following reasons: 1st, because said sale was not required by law; 2d, because the children of James Satcher, deceased, were not represented on the hearing of said application, as required by law; 3d, because James H. Grace, husband of Lucretia Grace, an heir, and Herrin F. Satcher, another heir, were not notified of said application, and no order was made for their notification; 4th, because said Lucretia Grace was not notified of said application; 5th, because all the parties in interest, or their representatives, had no notice of the interrogatories propounded to prove that said sale was necessary; 6th, because said interrogatories, and the answers thereto, do not show the necessity for said sale; 7th, because said application was filed on the 8th September, 1863, and was tried and disposed of on the 12th October following, being less than forty days after the petition was filed; 8th, because a portion of the lands was purchased by the administrator himself, who had no interest in the estate; 9th, because the judge of probate, who granted the order of sale, was the purchaser of a portion of the lands, and was legally incompetent to confirm the sale; 10th, because the report of the sale, and the order confirming it, are void for indefiniteness and uncertainty in the description of the lands; and, 11th, for such other non-compliances with the law as are apparent on the record."

The petition prayed that notice might be issued to the administrator, "and to the purchasers at said sale, if deemed necessary," to appear and contest the petition; but the record does not show that notice was issued to either of them, or that either appeared. "On the hearing," as the bill of exceptions states, "the petitioner read in evidence the proceedings and orders of the court in relation to the sale of said lands, and the report of the sale. It appeared from said records, that the application for the sale of said lands was heard, and the order granted for the sale of the same, less than forty days after the application was filed; that there was no evidence of any notice to said James H. Grace, or to his wife Lucretia, or to Herrin F. Satcher, who were heirs and distributees of said decedent's estate; that

there was no service of copies of the interrogatories to prove the necessity of the sale, either on said James H. Grace, or on said Herrin F. Satcher; neither did it appear that any guardian *ad litem* was appointed to represent the interests of the minor children of James Satcher, deceased, or represented their interest on the hearing of the application. There was other evidence from the record, all of which appears from the transcript thereof, relative to the points by reason of which it was claimed that the order of sale and sale were void. On motion of the contestant, the court dismissed the petition, holding that the proceedings were not void on their face; to which ruling and decision the said petitioner excepted."

From this decree an appeal was sued out by said James H. Grace, and the following errors were assigned: "1st, the granting of the order of sale, upon the matters set out in the record and proceedings; 2d, the granting of the order of sale, upon the facts shown by the record at the time; 3d, the refusal to set aside the sale, upon the petition for that purpose and the evidence to sustain it; 4th, the confirming of the order of sale, as shown by the record at the time; and, 5th, the ruling upon the matters set out in the bill of exceptions."

The two cases were argued and submitted separately, but were considered and decided together.

W. C. OATES, RICE, SEMPLE & GOLDTHWAITE, and MARTIN & SAYRE, for the appellants.—The petition to set aside the sale specifies the numerous errors and irregularities in the proceedings, for which the validity of the sale is impeached; and the record of the proceedings affirmatively sustains all the allegations of the petition. It is shown that the appellants' lands were sold, by virtue of proceedings to which they were not parties, and of which they were not notified, without pleadings or proof of the facts necessary to authorize the sale, and in utter disregard of all the statutory requisitions which were designed to protect the interests of infants and married women; and that the administrator who procured and made the sale, and who had no such interest in the estate as authorized him to become

the purchaser at his own sale, and the probate judge by whom it was confirmed, were the principal purchasers. Does the law sanction such proceedings?

1. Tested by the former decisions of this court, construing the acts of 1818, 1820, and 1822, in relation to the sale of a decedent's real estate by order of the probate court, the sale in this case can not be sustained. Those decisions hold—1st, that the proceedings are *in rem;* 2d, that the jurisdiction of the court attaches on the filing of a petition, in which is set forth a statutory ground for the sale; and, 3d, that when the jurisdiction of the court has once attached, by the filing of a sufficient petition, no subsequent irregularities can invalidate the proceedings, when collaterally attacked. But, in this case, the jurisdiction of the court never attached; the petition was not sufficient. The averment of the petition was, that the lands could not be "fairly, beneficially, *and* equitably divided," without a sale; while the statute requires an averment that they "can not be equitably divided." The petition seems to have been framed with reference to the act of 1822, (Clay's Digest, 224, § 16,) which authorized a sale when the lands could not be "equally, fairly, and beneficially divided"; and it would be sufficient under that statute. But the change in the language of the statute implies a corresponding change in the intention of the legislature; and while the word *equitably*, in the new statute, may be held synonymous with *equally* in the old, or with *equally and fairly*, it can not be construed as the synonym of the three adverbs conjointly used in this petition. To hold the petition sufficient, the word *and* must be construed to mean *or*, or no effect whatever must be attributed to the words *fairly and beneficially*.

But, even if the petition was sufficient to give the court jurisdiction, the former decisions of this court hold, that subsequent errors and irregularities, although they do not affect the proceedings when collaterally assailed, may be examined and corrected " by writ of error, or appeal, or by some other mode of proceeding acting directly and immediately" on the decree.—*Lightfoot v. Lewis*, 1 Ala. 175; *Matheson's Heirs v. Hearin*, 29 Ala. 210. In the recent case of *Doe d. Saltonstall v. Riley*, (28 Ala. 182,) it is dis-

tinctly said, that such irregularities and errors "may furnish good grounds for setting aside the sale." A motion to set aside the sale is a direct proceeding, and is, in some cases, the most appropriate remedy. Indeed, in some cases, as in this, it is the only remedy; for only a party to the proceedings can appeal from the decree, and an appeal must be sued out within two years, at most, from the date of the decree; and if a person who ought to have been notified, but was not, is afterwards made a party to the proceedings, in order that he may sue out an appeal, the order making him a party relates back to the date of the original decree, and his appeal is thus barred before he can sue it out.—*Binford v. Binford*, 22 Ala. 682. In this case, the appellants were not made parties, and were never before the court; and some of them had no notice of the proceedings, until after the expiration of the time limited for an appeal from the decree. One chief cause of complaint by them is, that they had no notice of the proceedings, and no opportunity to oppose the sale; and a motion to set aside the sale is the only remedy left to them.

Again; although the court may have had jurisdiction to grant the order of sale, yet the probate judge, having become one of the purchasers at the sale, as is shown by the decree confirming the sale, was incompetent from interest to confirm the sale; and for this reason, the sale, and the order confirming it, ought to be set aside.— *Wilson v. Wilson*, 36 Ala. 655; *Heydenfeldt v. Towns*, 27 Ala. 423, 439.

2. But it is strenuously insisted, on the part of the appellants, that the former decisions of this court, construing the acts of 1818, 1820, and 1822, do not furnish the rule by which this case is to be decided. Those decisions, commencing with the case of *Wyman v. Campbell*, (6 Porter, 219,) never commanded the assent of the bench or bar of the State; and in later years, each successive case has been placed on the doctrine of *stare decisis*. The grave objections to which those decisions are obnoxious, and the increasing dissatisfaction with which they were regarded, at length induced legislative interposition; and the act of February 7, 1854, entitled "An act to regulate the sale of real and personal property by executors and administra-

tors," was passed to remedy the evil, and to change the law which the courts had established as a rule of property. It was certainly competent for the legislature to change a rule of property which had thus been settled; to declare in what cases the probate court should have the power to order the sale of a decedent's real estate, and in what cases it should not; to alter the nature of the proceeding by which a sale was to be accomplished, or, without changing the nature of the proceeding, to declare the effect of errors and irregularities intervening after the jurisdiction of the court had attached, and to make a non-compliance with statutory requisitions, which were formerly non-essential, fatal to the validity of the sale and order of sale. The act of 1854 was intended to effect these changes; and its provisions are well adapted, as its language is appropriate, to accomplish the purposes for which it was designed; indeed, more appropriate language, or plainer and more positive provisions, could not well be devised.

The act of 1854 abolishes all distinctions, formerly existing, between a sale of land for division, and a sale for the payment of debts, and places all sales, for whatever purpose, on the same footing; making a compliance with "the requisitions of this act" essential to the validity of each. This change is significant, for it annihilates all ground for the assumption, which underlies the leading case of *Wyman v. Campbell*, that the personal representative, who applies for the order of sale, is "the sole party representing the estate"; and this very assumption is also the foundation of the case of *McPherson v. Cunliff*, (11 Serg. & Rawle, 430,) which is the controlling authority in the case of *Wyman v. Campbell*. It is impossible to hold that, under the act of 1854, the proceeding is *in rem* merely, or that jurisdiction of the subject-matter only is essential to the validity of the sale. Jurisdiction of the persons adversely interested, as well as of the subject-matter, is imperatively required by that act. The act shows, on its face, that it was framed and adopted under a deliberate conviction, that the safeguards provided by the old law, as settled by judicial construction, to protect the helpless against negligence, oppression, and fraud, were wholly insufficient;

and that the interests of helpless infants and women required a recurrence to the fundamental principle of justice, that every man shall have notice of any judicial proceeding which seeks to divest him of his rights.

To effectuate the purposes designed by the act of 1854, the law-makers employed, *ex industria*, two of the best settled modes of avoiding ambiguity in statutory provisions: that is, 1st, words of exclusion; and, 2d, words of enumeration, or specification. They first use words which, standing alone and unqualified, would deprive the probate judge of all jurisdiction or power to order a sale, and then they specify the particular cases in which he may exercise that power. "No application for the sale," is the language of the first section, "of the lands of deceased persons, shall be acted upon by any judge of probate, unless such application shall conform to the requirements of section 1868 of the Code"; while the fifth section declares, "that any order of sale, and sale, made without a compliance with the requisitions of this act, shall be wholly void". Construed in connection with the known evil to be remedied, this language is plain and unambiguous. The presumption is, that the law-makers knew the meaning of the language which they used, and meant what they said; that when they said "shall be wholly void," they did not mean "may be avoided on error or appeal"; that when they said "this act," they did not mean "the fifth section of this act." What are "the requisitions of this act," a non-compliance with which renders "wholly void" every sale and order of sale? Two requisitions, and but two, are found in the whole act; one being in the second section, and the other in the fifth. No ingenuity can make more than one requisition out of the fifth section —the requisition, namely, that proof shall be taken as in chancery cases, where minors or persons of unsound mind are interested, whether the allegations of the petition are denied or not. It requires a very strong case to authorize the courts to impute a mistake to the legislature, and, on the assumption of such mistake, to substitute new and different words for the words actually used in a statute; yet, here, the court must suppose two mistakes, and substitute two new words—must hold that "this *act*"

means "this *section*," and that "the *requisitions*" of the act mean the single requisition of that section.

In support of the rules of construction above contended for, and the propositions above stated, the following authorities are cited: Smith on Statutes, §§ 478, 482, 488, 491; Sedgwick on Const. & Stat. Law, 319, 322, 350, 369, 372, 378; *Regina v. Inhabitants of Fordham*, 11 Ad. & El. 88; *Davison v. Gill*, 1 East, 64; *Bloom v. Burdick*, 1 Hill, N. Y. 130; *Schneider v. McFarland*, 2 Comstock, 459; *Havens v Sherman*, 42 Barbour, 636; *Sears v. Terry*, 26 Conn. 273; 7 Barn. & Cr. 6; 1 Mann. & Gr. 448; 1 Burr. 445; 2 Stra. 1123; 7 Mass. 524; *Macy v. Raymond*, 9 Pick. 286.

PUGH & BAKER, *contra.*—Under the former decisions of this court, the jurisdiction of the probate court to order the sale attached on the filing of the petition, in which was alleged the existence of one of the statutory grounds for the sale; and all the subsequent errors and irregularities avail nothing in this proceeding.—*Wyman v. Campbell*, 6 Porter, 219; *Cox v. Davis*, 17 Ala. 714; *Field's Heirs v. Goldsby*, 28 Ala. 218; *Matheson's Heirs v. Hearin*, 29 Ala. 210; *King v. Kent's Heirs*, 29 Ala. 542. These decisions have become a settled rule of property, and public policy requires that they should be sustained. To overrule them, would work manifest injury to the interests of decedents' estates, by creating among purchasers a distrust in the validity of sales by the probate court, and thus causing sales, when necessary, to be made at great sacrifices. The act of 1854, while endeavoring to regulate these sales, does not show a manifest intention to change this settled rule of property. Its provisions are various, and somewhat conflicting; and such a construction must be placed on the entire act as will make all its parts harmonize, if possible. Some of its provisions are clearly directory only, though imperative words are used. The important change intended to be effected by that act was, to require proof of the jurisdictional fact of the necessity for the sale, where minors and persons of unsound mind were interested in the estate; and it can be allowed full effect to that extent, without unsettling the former decisions.

A. J. WALKER, C. J.—A motion was made in the probate court, by the appellants, to set aside the sale by the appellee, of the lands of their deceased ancestor, under an order of such court, granted on application of appellee as administrator. The motion was preceded by a petition, which was treated as an exhibition of the grounds of the motion; and after a trial, in which evidence was introduced, the court overruled the motion, and refused to grant the petition. The case presents the question, whether the order of the probate court for the sale of the land was void.

[1.] It is the settled doctrine in the decisions of this court, that the proceeding before the probate court, for the sale of the lands of a decedent, is *in rem;* that the jurisdiction of the court attaches, upon a petition setting forth a statutory ground of sale; and that the order of sale is not void, although the proceedings may abound in errors, if the petition contain the above-stated jurisdictional allegation.—*King v. Kent,* 29 Ala. 542; *Matheson v. Hearin,* 29 Ala. 210; *Field v. Goldsby,* 28 Ala. 218. This doctrine is beyond the pale of controversy in this court. The order of sale was, therefore, not void, unless the jurisdictional allegation was wanting; or unless the principle established by this court has been changed by statute, and the invalidity of the decree results from an application of the law as it is made by such change. We must, then, test the validity of the decree of sale, by making two inquiries, to-wit: 1st, whether a ground of jurisdiction is alleged in the petition; and, 2d, whether there is a statute, which so changes the law, that from its application the invalidity of the order upon some other ground results. These two inquiries we make in the order of their statement.

[2.] The jurisdictional allegation is, that the land could not "be fairly, beneficially, and equitably divided." This allegation seems to have been designed to be conformable to the act of 1822, which requires an allegation that the land "can not be equally, fairly, and beneficially divided." Clay's Digest, 224, § 16. The ground of jurisdiction under section 1867 of the Code, which was the law in force when the application was made in this case, is, that the land "can

not be equitably divided." It is obvious that there is not a *verbal* conformity of the allegation of the administrator's petition to the section of the Code, under which it was filed. But in *King v. Kent, (supra,)* it was held that an allegation, of import equivalent to that required by the statute, will sustain the jurisdiction, and that in determining whether the allegation is of equivalent import, the court should select the signification of words favoring the validity of the order. In that case, we remarked, after a most careful consideration of the point, " that in determining whether the record does disclose the jurisdictional facts, we should construe the language of the record most favorably for the maintenance of the decree, and, where words are susceptible of two or more constructions, adopt that which will sustain the decree." Whether the same rule of construction would prevail on appeal from an order of sale, we do not now decide; but we have no doubt of the propriety of its adoption in this case, where a motion is made to set aside an order of sale, in the court which rendered it.

It is conceivable, that a construction might be placed upon the words, "fairly, beneficially, and equitably divided," which would render them diverse in effect from the words "equitably divided." They are, however, susceptible of a construction, which would make each of the three adverbs so nearly the synonym of the others, that, if there be a distinction at all, it is too nice for practical application, and not likely to be observed by those unaccustomed to refinements in defining words. One of the definitions of *"fairly"* is *"equitably,"* (Worcester's Dictionary,) and if we understand *"beneficially"* to refer to and qualify the division, as affecting the interest of the respective owners in the land itself, we can not perceive how a division, which would not *in itself* be beneficial, or (adopting an equivalent positive form of expression) which, tested by its own intrinsic qualities, would be injurious, could be equitable. Upon this reasoning, we decide, that the jurisdictional allegation is, for the purposes of this case, sufficient.

[3.] Has any act of the legislature so changed the law, that the order of sale is void for any reason disclosed by

the record, notwithstanding the jurisdiction of the court to make the order attached? The only statute supposed to have such an effect is the act of 7th February, 1854, pp. 55, 56. That act consists of five sections, an analysis of which becomes necessary to a comprehension of the question we are to decide, and of the argument in support of our decision.

The first section amends various sections of the Code, so as to leave it in the discretion of the court to require notice of applications for orders of sale, and of sales, to be given by publishing advertisements in a newspaper, or by posting them up.

The second section declares, that all applications must conform to the requirements of section 1868 of the Code. The requirements of that section are, that the application should accurately describe the land, give the names of the heirs or devisees, and their places of residence, and state which of the heirs are infants, married women, or of unsound mind.

The third section extends the duties imposed upon the judge of probate by sections 1869, 1870, 1871, and 1872 of the Code, to all applications for sale of land. The duties imposed by those four sections upon the probate judge are, to appoint a time, not less than forty days from the application, for hearing it; to appoint a guardian *ad litem* for infants and persons of unsound mind; to issue a citation to the adult heirs or devisees residing in the State, notifying them of the application, and of the day of hearing, which citation is required to be served ten days before the hearing, and upon husband and wife, where there are married women; to make publication in a newspaper as to non-residents; to require proof by depositions, and to file the depositions "*of record*," and to confirm the sale when made.

The fourth section requires, that the guardian *ad litem* should deny in writing the allegations of the petition, "and, if necessary, employ counsel to defend the interest of those he represents," and that the guardian *ad litem* should not be the petitioner, or of kin to the petitioner.

The fifth section of the act is in the following words:

"No order for the sale of land belonging to any estate shall be made, when there are minors, or persons of unsound mind, interested in such estate, unless the probate court shall have taken proof by deposition, as in chancery cases, showing the necessity of such sale; and this proof shall be taken, whether the allegations in the petition are denied or not by the guardian, or other person appointed by the court to represent the minors or persons of unsound mind; *and any order of sale, and sale, made without a compliance with the requisitions* OF THIS ACT, *shall be wholly void.*"

It is argued for the appellants, that under the last clause of the fifth section of the statute, every order of sale, and sale, made without a compliance with each of the several requisitions of the five sections above noticed, is wholly void. We can not assent to such a proposition. The maintenance of it would lead to consequences alike absurd and injurious. It would make a strict compliance with a large number of statutory requisitions the unyielding standard of the validity of all orders of sale. Some of those requisitions pertain to matters not evidenced by the record. For example, a decree of sale would be void, if the guardian *ad litem* was of kin to the administrator, or if there was an inaccuracy in the list or description of the heirs, or their residences, or if the directions as to the mode and time of giving notices were not strictly observed. One desiring to purchase at the sale would be unable to ascertain, by an examination of the record and papers, whether the title would be valid. After making the most careful inquiry, and finding no defect in the proceedings, and therefore venturing on a purchase, his title might be defeated by evidence that there was some heir whose name was overlooked or forgotten by the administrator, or not known by him, and therefore not inserted in his petition. In like manner, his title might be defeated by a mistake as to the residence of any one or more of the heirs. Many other equally forcible illustrations of the unavoidable and irremediable uncertainty of such sales might be given. When it is considered that the probate judges do not generally belong to the profession of the law, and are not chosen generally for their legal attainments, it is not difficult to perceive that, if the

proposition asserted by the counsel should be maintained, a valid sale of land under the order of the probate court, since the date of the act of 1854, would be an exception to a general rule. Not merely the tendency, but the inevitable effect of such a decision, would be to destroy confidence in such sales, and cause great injury to heirs by sales at greatly depreciated prices, when an exceptional case of a compliance with the numerous requisitions of the statute occurs. The legislature will be held to have absurdly subverted its own purpose of benefiting estates, by affording a safe, cheap, and expeditious mode of accomplishing the sales required in the process of administration, with the strictest care for the interest of the persons interested, and to have adopted a plan which would lead to the sacrifice of estates. The courts of the country would be filled with suits, in which the validity of sales will be contested upon the question of a compliance with all the minute details of the machinery by which the sale was reached.

The absurd and ruinous consequences of a statute which is plain, afford no justification for setting it aside by the courts.—Smith on Statutory and Constitutional Construction, 627, § 478; Sedgwick on S. & C. Law, 211–213. But, if there is uncertainty and obscurity in the law, such consideration may be taken into view, as a help to the ascertainment of the legislative intention, and one clause may be compared with another.—Smith on S. & C. Construction, 631, §§ 484–489, 648, § 503; Sedgwick on S. & C. Law, pp. 296–305, 311. If it were clear that the legislature had prescribed that the validity of the order of sale should depend upon a strict compliance with all the requirements of the five sections of the statute, we certainly should have no election, and, however injurious we might deem the law, it would be our duty to execute it. The legislature has not clearly so prescribed.

The declaration in the last clause of the fifth section, that all orders of sale, and sales, made without a compliance with the requisitions "*of this act,*" shall be wholly void, is a part of the same sentence with the direction as to the mode of taking proof when minors or persons of unsound mind are parties, and is separable from it only by a comma or

semi-colon, and connected with it by the copulative conjunction "and." The collocation of the two members of the sentence, and their grammatical connection, strongly tend to show, as will be suggested to any person reading the sentence through, that by "the requisitions of this act" is meant the requisitions of this section. The fifth section of the statute is in itself a complete announcement of the legislative will, having no connection with, or dependence upon the four preceding sections. It is of itself within the definition of an act, and may be correctly denominated an act; and if the fifth section should be called an act, the word would be correctly used. It is true that the word *act* is generally used to designate the entire bill with all the parts, adopted by a single effort of the legislative will. Nevertheless, in another, and perhaps more correct sense of the word, the distinct and complete and independent legislative command contained in the fifth section may be denominated an act. There is, therefore, no violence to the meaning of the word by referring it to the section, as the context indicates was intended by the legislature. We should, however, perhaps still feel bound to refer the word act to all the sections, if the intention to restrict its application was not otherwise and for additional reasons apparent.

The fifth section is limited to cases in which infants and persons of unsound mind are interested. Those parties are incapable of protecting themselves, and therefore the legislature seems, *ex industria*, to have guarded their rights. For this purpose purely the fifth section seems to have been framed. It provides, that when such persons are interested, the proof must be taken as in chancery cases, showing the necessity of the sale, whether the allegations are denied or not. We think that the latter clause of the section sprung from the same strong desire of the legislature to protect those persons incapable of protecting themselves, by making the omission of the cautionary step in their favor a reason for the unqualified invalidity of the decree, and of the sale made in pursuance of it.

The third section of the act, by incorporating section 1872 of the Code, requires that the facts stated in the ap-

plications should be proved by the depositions of disinterested witnesses. The fifth section requires proof in the same mode of the allegation of the necessity of the sale, in cases where infants and persons of unsound mind are parties. After making the requisition of proof by depositions of all the allegations in all cases, the statute repeats it as to a particular allegation in reference to a particular class of cases. Why was this done? Is it simply a vain repetition? Has the direction as to taking proof in the fifth section no effect? If a non-compliance with the requirement of the third section renders the order of sale wholly void, then the repetition of the requirement as to a particular allegation in a particular class of cases is altogether supererogatory and useless. But if, on the other hand, the word *act* in the fifth section refers only to the enactment contained in that section, we have an operation for the mandate of the fifth section as to the mode of taking proof of the necessity of sale in a particular class of cases. Parties incapable of protecting themselves are selected as the special subjects of legislative protection, and, as to the jurisdictional allegation, a mode of proof calculated to shield them from imposition, common to all other cases, is enforced by an unbending rule, that its neglect shall utterly vitiate the order, and the sale made in pursuance of it. Upon no other theory has the first clause of the fifth section any office to perform.

The fourth section of the statute requires, that the guardian *ad litem* should deny in writing the allegations of the petition. The fifth section requires, that proof of the necessity of the sale should be taken by deposition, whether the denial by the guardian *ad litem* is made or not. Now, if the word *act* in the fifth section embraces all the antecedent sections, and if, therefore, a non-compliance with any one of the requisitions of the antecedent sections renders the order of sale absolutely void, it would be void on account of the failure of the guardian *ad litem* to deny all the allegations of the petition. The order being void in the absence of the denial, what reason could there be in requiring in the fifth section that proof should be taken of a particular allegation, notwithstanding there was no denial? If

the order was void in the absence of the denial, what office is performed by the statutory mandate in the fifth section, that the proof should be taken in the prescribed manner, whether there was a denial or not, and in default thereof, that the order should be void? According to the argument which we combat, the legislature says, if there is no denial the order is void in all cases; and it immediately proceeds to say, if there is no denial, and if in addition thereto the proof of a particular allegation is not taken in the prescribed mode, the order in a particular class of cases is void. It is thus obvious that, upon the construction we are contesting, the direction of the fifth section, that the proof should be taken of a particular allegation in a specified class of cases, whether the prescribed answer was filed or not, under penalty of absolute invalidity, is supererogatory and useless. Upon the supposition that only a non-compliance with the fifth section renders the order void, an office for the direction is found. The legislature must be supposed to have known, that under the decisions of this court the mere omission of the guardian *ad litem* to answer would only render the order voidable; and it therefore separates the cases of infants and persons of unsound mind, and as to them makes a special provision, that although the guardian *ad litem* may neglect his duty, and fail to controvert the allegations by a written denial, the proof of the material allegation of the important fact of the necessity of the sale must be made by depositions. To this protection for persons not *sui juris* it was deemed necessary to give the guaranty, that the order should in its absence be wholly void.

It is the duty of courts to strive to give a reasonable operation to every part of the law, and never to attribute, if possible, to the legislature the doing of a vain and useless thing.—Smith on S. & C. Construction, 671, § 627. We consult this cardinal and wise rule of interpretation by holding, that "the requisitions of this act," a non-compliance with which makes void the order of sale, mean the requisitions of the fifth section.

In this case, the requisite jurisdictional fact was alleged, and it was proved by depositions taken as in chancery cases;

and although there are defects in the proceeding, including a failure to correctly state the names of the heirs, the order of sale is not void.

An argument against the conclusion attained by us, and above expressed, has been drawn from the peculiar phraseology of the second section of the act of 7th February, 1854. That section declares, "that no application for the sale, for any purpose, of the lands of deceased persons, *shall be acted upon* by any judge of probate, unless such application shall conform to the requirements of section 1868 of the Code." We attach no importance to the prohibitory character of phraseology which is adopted. Unquestionably, in every statute prescribing the duties of the probate judge, a prohibition of inconsistent action by him is implied. The prohibition is quite as clear, though perhaps less emphatic, in a statute which positively prescribes that the court shall act upon an application of specified character, as in a statute which prohibits action without such application. The peculiar phraseology of the second section above noticed, therefore, makes no change in the question of what gives the court jurisdiction. There is no change in the statute which affects the decisions of this court as to what is requisite to sustain the jurisdiction of the probate court to order the sale of lands of decedents. Those decisions are eminently rules of property, and ought not now to be disturbed. The purpose of the adoption of the second section above copied was not to change the law on the subject of jurisdiction. There was, before the adoption of that section, a difference in the prescribed allegations of a petition for the sale of land under sections 1754, 1755 and 1756, from those of a petition under section 1868. The latter required statements of an important character which the former did not. The object of the second section was to make the requirement of those statements applicable to proceedings for the sale of land under the other sections.

The peculiar phraseology of section two of the act of 7th February, 1854, is pressed with so much persistency upon us, as showing that the legislature intended to make the pursuit of its command essential to its jurisdiction, that we

are induced to present in parallel column with it a provision of the act of 1822.

*Second section of act of* 1854: "No application for the sale for any purpose, of the lands of deceased persons, shall be acted upon by any judge of probate, unless such application shall conform to the requirements of section 1868 of the Code."

*Fourth section of the act of* 1822: "Said court shall not decree or order sale of the real estate described in such petition, unless satisfied by proof, to be taken by deposition as in chancery cases, and filed in the cause."—*Clay's Digest*, 225.

It is impossible to find anything in the left-hand column, tending more clearly to prescribe a condition precedent to the exercise of jurisdiction, than is found in the right-hand column. Yet it is well settled, that jurisdiction did not depend upon a compliance with the extract from the act of 1822, and has been so settled since the decision in *Wyman v. Campbell*, (6 Porter,) made nearly thirty years ago. It is, therefore, utterly impossible for us to hold that the language used in the second section of the act of 1854 varies the question of jurisdiction.

The proceeding in the probate court for the sale of decedents' lands is held, by a long chain of decisions not now to be questioned, to be *in rem;* and therefore the validity of the orders can never depend upon the fact that the court has acquired jurisdiction of the persons of the parties. The requisition of notice is just as plainly and as positively made in the act of 1822 as under any subsequent law. Clay's Digest, 224, § 17. Under the act of 1822, the order of sale was not void on account of the want of notice. It was so settled by the decisions of this court. We can not decide to the contrary, unless we disregard the doctrine of *stare decisis*, and overturn decisions which constitute a rule of property, under which millions of dollars worth of land are probably held. No person who will examine the act of 1822 can say that there is a reason for regarding the proceeding to sell land under the present law as *in personam*, which did not apply to the old law, under which, as every intelligent lawyer knows, the proceeding was regarded as *in rem*.

We have examined the opinion and record in *Johnson v. Pynes*, decided at the June term, 1866, and we think the decision in that case can be sustained without disturbing any principle settled in this opinion.

In this case we have waived a critical examination of the bill of exceptions, but we do not decide that it is so framed as to present for revision the questions adjudged.

Affirmed.

In the case of *Grace v. Kirkland*, the decree of the probate court is affirmed, on the authority of this case.

NOTE BY THE REPORTER.—After the delivery of the original opinion in this case, the appellants' counsel made an application for a re-hearing. The application was overruled, but the opinion of the court was modified in some particulars, though the opinion now on file does not show what changes were made. On the application for a re-hearing, the following dissenting opinion was filed by BYRD, J.

BYRD, J.—I yielded my assent to the original opinion of the court with reluctance; and now, on the application for a re-hearing, I desire to say, that my difficulty consists in restricting the clause of the fifth section of the act approved February 7, 1854, (Pamph. Acts, p. 55,) which reads as follows—" and any order of sale, and sale, made without a compliance with the requisitions of this *act*, shall be wholly void,"—to that section. The title of the act is, "An act to regulate the sale of real and personal property by executors and administrators," and it seems to me that the sensible and legitimate interpretation of the words " this act," used in the clause recited, is to refer them to the word "act" in the title, and not to the fifth section of "this act." Again, if they only refer to that section, then the words, in the clause recited, "and sale made," would be unmeaning; for if, under that section, the "order of sale" was "wholly void," then no sale under it would be valid, nor would it confer any title on the purchaser. But I find an office for the words "and sale made," by looking back to the first section of the act; for, although the "order of sale" might

be valid, and free from all objection, yet the legislature intended to declare the sale should be "wholly void," unless the executor or administrator gave the notice for the time and as required by the provisions of the first section of the act.

It is admitted that, to give the clause recited a literal construction, would present some apparent absurdities and hardships. But for these, the legislative, and not the judicial department, would be responsible : *ita lex scripta est*. Besides, as to any real absurdities arising from such a construction, there are well-recognized principles of construction, which would dispose of them, but which I shall not attempt to solve in this case, as my brethren are confident of the correctness of their opinion, and I see no good to arise from a further consideration of the subject on my part. The decisions of the court before the passage of the law, was, no doubt, the cause of its enactment.

I content myself with the expression of the foregoing views, and with the further remark that, although I am in favor of a rehearing of the cause, yet, deferring to the opinion of my brethren, I yield to their opinion my judicial acquiescence.